**James H. MORSE, Administrator of the Estate of Philip Krause, Plaintiff,**

v.

**Paul J. GERITY, M.D. and Paul J. Gerity, P.C., Defendant.**

**Civ. No. B–78–217.**

United States District Court,
D. Connecticut.

June 4, 1981.

Joel H. Lichtenstein, Koskoff, Koskoff & Bieder, P. C., Bridgeport, Conn., for plaintiff.

Gregory C. Willis, Willis & Willis, Bridgeport, Conn., for defendant.

## MEMORANDUM OF DECISION

EGINTON, District Judge.

Plaintiff served notice of a non-party deposition subpoena *duces tecum* on John Mirabito, Administrator of Lawrence & Memorial Hospital, requesting the production of certain documents concerning defendant, Paul J. Gerity, M.D. Mr. Mirabito moved to quash the subpoena on the ground that the documents are privileged under Conn. Gen.Stat. § 38–19a. Following an *in camera* inspection of the materials, this Court held that Connecticut law governs the question of privilege with respect to the documents pertaining to peer review proceedings. Thereafter, the parties submitted briefs addressed to the scope of the privilege. Specifically, this Court raised *sua sponte* the question of whether the statute permits discovery of peer review proceedings unrelated to the subject matter of the instant suit—Dr. Gerity's treatment of Philip Krause. For the reasons herein set forth, this Court finds that the privilege applies to all peer review proceedings. Accordingly, the motion to quash is granted.

There are no judicial decisions, state or federal, in this district defining the scope of the peer review privilege as amended in 1980 by P.A. 80–446, which provides in relevant part that:

> The proceedings of a medical review committee conducting a peer review shall not be subject to discovery or introduction into evidence in any civil action for or against a health care provider arising out of the matters which are subject to evaluation and review by such committee.

The statutory language fails to specify whether there must be a connection between the civil action in which the discovery is sought and the subject matter under review by the committee in order to make the privilege applicable. Presumably, the pending civil action should involve the same doctor whose treatment of patients was under scrutiny by the review committee. What is not so clear is whether the privilege is meant to apply only as to review committee proceedings involving the individual patient who is now suing the doctor, or to all review proceedings in which the defendant doctor was ever involved. Confronted with such uncertainty, this Court looks to the legislative history and underlying policy for guidance as to the scope of the privilege.

It is indisputable that the legislature enacted the privilege to encourage meaningful peer review by assuring the confidentiality of all proceedings conducted by a medical review committee. See Connecticut General Assembly, Judiciary Committee, Public Hearings (March 12, 1980, p. 561) (explanation of the Connecticut Hospital Association). This privilege has been regarded as a "proper legislative choice between the competing public concerns of fostering medical staff candor, on the one hand, and impair-

ing medical malpractice plaintiffs' access to evidence, on the other hand." *Eubanks v. Ferrier*, 245 Ga. 763, 267 S.E.2d 230, 232 (1980), citing *Matchett v. Superior Court*, 40 Cal.App.3d 623, 115 Cal.Rptr. 317 (1974). Had the Connecticut legislature intended to limit the application of the privilege to peer review proceedings connected to a pending lawsuit, statutory language to that effect could easily have been drafted. Instead, the statute contains broad language, followed by only four enumerated exceptions to the privilege.*

Furthermore, although the privilege is not absolute, the legislative history and judicial decisions in other jurisdictions with similar statutes, although sparse, support a liberal interpretation both as a matter of statutory construction and public policy. See, e.g. *Scott v. McDonald*, 70 F.R.D. 568 (N.D.Ga.1976); *Eubanks v. Ferrier*, 245 Ga. 763, 267 S.E.2d 230, 232 (1980); *Young v. Gersten*, 56 Ohio Misc. 1, 381 N.E.2d 353 (Ohio C.P. Franklin County, 1978). Indeed, if the purpose of the statute is to encourage doctors to evaluate their peers without fear of disclosure, that purpose would be hampered by public release of any proceedings, not just those involving the patient who has sued. The danger of inhibiting candid professional peer review exists by the mere potential for disclosure. Any possibility that proceedings might be discoverable at a future date in some unrelated patient suit presents a risk that a doctor will be reluctant to provide the meaningful peer review contemplated by the statute. The overriding importance of these review committees to the medical profession and the public requires that doctors have unfettered freedom to evaluate their peers in an atmosphere of complete confidentiality. No chilling effect can be tolerated if the committees are to function effectively.

This Court therefore concludes that the legislature, to assure that the laudable goals of the peer review process are achieved, intended by the language of P.A. 80–446, to prohibit discovery of all peer review proceedings. Accordingly, Mr. Mirabito's motion to quash the production of materials on the grounds of privilege is granted. In so holding, this Court does not preclude plaintiff from employing other discovery devices to elicit in a different form any relevant information that may be contained in the privileged materials.

It is So Ordered.

---

* The statute does not preclude "(1) in any civil action, the use of any writing which was recorded independently of such proceedings; (2) in any civil action, the testimony of any person concerning the facts which formed the basis for the institution of such proceedings of which he had personal knowledge acquired independently of such proceedings; (3) in any health care provider proceedings concerning the termination or restriction of staff privileges, other than peer review, the use of data discussed or developed during peer review proceedings; or (4) in any civil action, disclosure of the fact that staff privileges were terminated or restricted, including the specific restrictions imposed, if any."