243 N.J. Super. 563 (1990)
580 A.2d 1101
BEVERLY BUNDY, PLAINTIFF,
v.
WALTER SINOPOLI, M.D.; JOHN DOE; JAMES DOE AND CHARLES DOE, (NAMES BEING FICTITIOUS), DEFENDANTS.
Superior Court of New Jersey, Law Division.
February 21, 1990.
*564 Barry K. Odell (Novins, York, DeVincens & Pentony) attorney for plaintiff Bundy.
*565 Richard A. Amdur, attorney for defendant Sinopoli.
Todd C. Brower, (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone) attorney for defendant Community Medical Center.
CLYNE, P.J.Cv.
In this medical malpractice action, the plaintiff alleges that defendant physicians deviated from accepted medical standards in the care and treatment of plaintiff during surgical procedures. The issue before the court is whether a plaintiff may through discovery obtain the hospital's Peer Review Committee file.
The Court finds that any opinions, criticisms, or evaluations contained within the Peer Review Committee file are protected by the privilege of self-critical evaluation as defined in Wylie v. Mills, 195 N.J. Super. 332, 478 A.2d 1273 (Law Div. 1984).
In order to obtain any other material, the Court must conduct an in camera review of the file and determine whether plaintiff has a particularized need for such material as defined in McClain v. College Hospital, 99 N.J. 346, 492 A.2d 991 (1985).
The defendant, Dr. Sinopoli, performed a hysterectomy on plaintiff in Community Memorial Hospital. As part of discovery, plaintiff subpoenaed certain records and information in the possession of the Community Memorial Hospital. She sought to depose the chairperson and/or a participant of the Peer Review Committee which reviewed Dr. Sinopoli's treatment of the plaintiff. Specifically, the plaintiff seeks:
... any and all records, reports, memorandum and/or other writings with respect to the Peer Review concerning Dr. Sinopoli's care and treatment of Beverly Bundy during the hospitalization of January 21, 1986.
Thereafter, defendant Sinopoli filed a motion to quash the subpoena duces tecum asserting that Peer Review material is confidential and privileged. At the time of the motion to quash the New Jersey Administrative Code dealt specifically with the Peer Review process. According to the Code, the Peer Review *566 process should identify problems that may exist in patient care and suggest appropriate action to correct those problems. This process was mandated at all medical care facilities, by both the Joint Commission on Accreditation of Health Care Organizations (JCAHO) and by the State Department of Health pursuant to the Licensing Standards for Health Care Facilities. N.J.A.C. 8:43B-6.1 et seq. Specifically, the medical staff of a hospital determined a formal method of monthly peer group review and evaluation of the clinical practice within the hospital. N.J.A.C. 8:43B-6.1(a)(2). The medical staff was to establish, develop, and adopt a set of rules, regulations and by-laws in conformity with the rules of the governing body of the hospital. The by-laws of the medical staff derived their source from guidelines used by the New Jersey Medical Society, the Joint Commission on Accreditation of Hospitals, or the American Osteopathic Association. N.J.A.C. 8:43B-6.2(a).
It should be noted that the above N.J.A.C. sections were repealed on February 5, 1990 and replaced with different sections regarding patient care. While not specifically addressing the area of Peer Review, these new sections provide a framework for the evaluation of the type and quality of care given to patients at hospitals. These changes in the code in no way substantively effect the decision of this Court.
According to the affidavit of Dr. John T. Kengeter, Vice President of Medical Affairs at Community Medical Center, the Peer Review process at the Community Center works as follows:
... the purpose of the quality assurance function is to provide a Peer Review process to insure that all services provided to patients at Community Medical Center are medically necessary, appropriate, and are of a quality which meets professionally recognized standards.
The medical staff of the hospital assumes the primary role in the quality assurance function. The medical staff is divided into departments according to specialities, including a department of obstetrics and gynecology. Each department conducts monthly reviews of completed records of discharged patients and reviews other sources of medical information relating to patient care in order to identify opportunities to improve care and to identify problems in patient care. If a department identifies problems in patient care or clinical performance, or *567 identifies patterns of deficient care, with regard to a particular physician, the department will take appropriate action. Such action includes having the physician identified attend a conference with the department chairman and/or the department as a whole (or subcommittee thereof). The purpose of such a conference is to provide the physician with the opportunity to respond to the possible deficiencies noted and to discuss and mutually agree to changes in the physician's pattern of practice if necessary. The department may determine as a result of such a meeting that no real problem exists or it may conclude that a physician requires additional training or supervision on certain types of cases until they have corrected the problem or demonstrated their proficiency in that area. Any recommendation for curtailing privileges, requiring supervision, or requiring additional training is forwarded to the executive committee of the medical staff for approval.
Rule 4:10-2(a) provides that, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." Courts construe the rules of discovery liberally with the broadest possible latitude. A party must "... produce all relevant, unprivileged information which may lead to relevant evidence concerning the respective positions of both plaintiff and defendant." Shanley & Fisher, P.C. v. Sisselman, 215 N.J. Super. 200, 216, 521 A.2d 872 (App.Div. 1987).
In Gureghian v. Hackensack Hospital, 109 N.J. Super. 143, 262 A.2d 440 (Law Div. 1970), the application of the policy of open discovery resulted in the production of hospital reports. In Gureghian, the plaintiff sued the defendant hospital for negligently causing the death of an infant during delivery. The plaintiff sought the production of a report stating the cause of the infant's death including the autopsy findings. The report, a monthly summary of infant deaths occurring at or shortly after delivery, contained evidence of five other infant mortalities. The report was not included in the patient's record since it was not made during the course of her treatment by her physician. The Perinatal Mortality Committee of the Department of Obstetrics and Gynecology prepared the report more than one month after the infant's death and noted facts, causes of death, and autopsy findings concerning the infant. The court stated:
The committee report contains a capsulized finding as to the infant's condition at delivery and the cause of death as revealed by autopsy. Since a basis of the *568 cause of action is the alleged negligence in the delivery of the infant, which negligence caused the infant's death, the committee report may well be relevant and useful in the preparation of plaintiff's case. Id. at 146, 262 A.2d 440.
The liberal discovery philosophy should not, however, encompass matters protected by any applicable privilege. See Dickson v. Rutgers, 110 N.J. 432, 541 A.2d 1046 (1988). Neither the New Jersey statutes nor the N.J.A.C. creates a Peer Review Privilege as to the discoverability of the Peer Review Committee file. There is a statutory privilege created for a hospital's Utilization Review Committee. That statutory privilege was not extended to include the Peer Review Committee. The statute creating the Utilization Review Committee states:
Information and data secured by and in the possession of utilization review committees established by any certified hospital or extended care facility in the performance of their duties shall not be revealed or disclosed in any manner or under any circumstances by any member of such committee except to: (a) a patient's attending physician, (b) the chief administrative officer of the hospital or extended care facility which it serves, (c) the medical executive committee, or comparable enforcement unit, of such hospital or extended care facility, (d) representatives of, including intermediaries or carriers for, government agencies in the performance of their duties, under the provisions of federal and state law, or (e) any hospital service corporation, medical service corporation or insurance company with which said patient has pertinent coverage under a contract, policy or certificate, the terms of which authorize the carrier to request and be given such information and data. N.J.S.A. 2A:84A-22.8.
The Court in Young v. King, 136 N.J. Super. 127, 344 A.2d 792 (Law Div. 1975), refused to expand the utilization review committee privilege to include other hospital review committees. In Young, the court reviewed a request for production of the records of four hospital committees that concerned the treatment rendered to plaintiff/decedent during his hospitalization and specifically concerning his death. Id. at 129, 344 A.2d 792. The defendants argued that N.J.S.A. 2A:84A-22.8 inferentially included all review committees and hence all the requested materials were protected from discovery.
The Court interpreted the term "Utilization Review Committee" as follows:
The Utilization Review Committee is a specific committee, a word of art so to speak. It is an integral part of the utilization review plan required in order to *569 qualify under the Social Security Act and thus participate in federal and state funded programs. (Citations omitted.) Id. at 130, 344 A.2d 792.
The Court stated that this statutory protection was added to effectively "... implement the provisions of Medicare and other health care measures." Id. The specific and special protection that the legislature has afforded Utilization Review Committees should not be broadened to include other committees. Id.
N.J.S.A. 2A:84A-22.10 sets forth the extent of the statutory immunity accorded Peer Review committees. It states:
Any person who serves as a member of ... (b) a hospital medical staff committee having the responsibility of evaluation and improvement of the quality of care rendered in such hospital; ... or (d) a hospital peer-review committee having the responsibility for the review of the qualifications and credentials of physicians or dentists seeking appointment or reappointment to the medical or dental staff of a hospital, or of questions of the clinical or administrative competence of physicians or dentists so appointed, or of matters concerning limiting the scope of hospital privileges of physicians or dentists on the staff, or of matters concerning the dismissal or discharge of same; ... shall not be liable in damages to any person for any action taken or recommendation made by him within the scope of his function as a member of such committee, subcommittee or society in the performance of said peer-review, ethics, grievance, judicial, quality assurance or professional relations review functions, if such action or recommendation was taken or made without malice and in the reasonable belief after reasonable investigation that such action or recommendation was warranted upon the basis of facts disclosed.
The Assembly Judiciary Committee statement describes the purpose of the legislation as to grant:
... immunity from liability for damages to a member of an ethics, grievance, judicial, quality assurance, or professional relations committee of a hospital, long-term health care facility, or professional association, provided that the actions taken were within the scope of the function of the committee, were without malice and were based upon reasonable grounds. (Assembly No. 4058-L. 1985, c. 507).
The Legislature, therefore, has sought to provide a protection or immunity to such members of Peer Review committees for the actions, recommendations, or statements that they make in the process. The Legislature has not, however, provided for a privilege regarding the information contained within the Peer Review process. The question remains whether there is a common law privilege applicable to the case at bar.
*570 Public policy dictates that the Court must in certain areas recognize the privilege of self-critical analysis. Wylie v. Mills, 195 N.J. Super. 332, 478 A.2d 1273 (Law Div. 1984). In Wylie, a corporate employee was injured in an automobile accident. The co-defendants sought production of an in-house corporate report on the accident. The purpose of the investigation and report was to determine whether the defendant corporation should alter its procedures to avoid future injuries to employees. The Court held that the factual information contained in the report would not be protected from disclosure to the defendants but that public policy demanded that the evaluative portions of the report would be protected by the privilege of self-critical analysis. Id. at 340, 478 A.2d 1273. The Court stated, "[t]he privilege prevents disclosure of confidential critical, evaluative, and/or deliberative material whenever the public interest in confidentiality outweighs an individual's need for full discovery." Id. at 338, 478 A.2d 1273; see, e.g., Roberts v. National Detroit Corp., 87 F.R.D. 30 (E.D.Mich. 1980).
In reviewing public policies which suggest a need for a self-critical analysis privilege, the Court stated:
In short, confidentiality and the public need for confidentiality are the sine qua non of effective internal self-critical analysis since such confidentiality will encourage open and frank criticism. Such criticism is essential in recognizing the cause of past problems and the elimination of future problems. If the public policy of safety improvements in practice and procedures is to be encouraged, the public need for disclosure for the individual must give way. This is especially so if such improvements are to continue and develop.
Valuable criticism can neither be sought nor obtained nor generated in the shadow of potential or even possible public disclosure. It is not realistic to expect candid expressions of opinion or suggestions as to future policy or procedures in an air of apprehension that such statements may well be used against one's colleagues or employer in a subsequent litigated matter.
The purpose of an investigation intended to seek criticism, opinion or suggestion and form the basis of criticism of then existing policy or procedure is self-improvement. The value of the investigation is questionable, if the input is not reliable. It is clear that the reliability of the input in this situation varies inversely with the risk of disclosure of the input or resulting criticisms. Id. 195 N.J. Super. at 339-340, 478 A.2d 1273.
The concept of self-critical analysis as applied to the health care area was recognized by the New Jersey Supreme Court in *571 McClain v. College Hospital, 99 N.J. 346, 492 A.2d 991 (1985). In McClain, the administratrix of the patient's estate brought a wrongful death action against the hospital and physicians alleging medical malpractice. The trial Court ordered the release of documents compiled by the State Board of Medical Examiners while investigating the care provided at the hospital. The report in question contained testimony from staff and supervisory physicians regarding the care rendered to various patients at the hospital. The report also contained the executive committee evaluation and recommendations. The plaintiff argued that the information was relevant to the litigation and otherwise unavailable from other sources. Following an in camera inspection of the documents, the trial court ruled that the documents produced by the State Board should be released to plaintiff. The Appellate Division affirmed.
The Supreme Court stated:
In short, disclosure of the materials involved in an internal investigation into health care service invokes serious and important questions of public policy deserving careful consideration by the courts. An applicant ... should demonstrate a need more compelling than the agency's recognized interest in confidentiality. Id. at 359, 492 A.2d 991.
The Supreme Court indicated that it was not addressing the discoverability of Peer Review committee material but rather the discoverability of documents compiled by the State Board of Medical Examiners in investigating the care provided at a hospital. However, the Court specifically held the concerns are similar and that in order for there to be revelation, there must be a showing of particularized need that outweighs the public interest in confidentiality of the investigative proceeding. This analysis should include: (1) the extent to which the information may be available from other sources, (2) the degree of harm that the litigant will suffer from it's unavailability and (3) the possible prejudice to the agency's investigation. Id. at 351, 492 A.2d 991.
Further extending their analysis into the Peer Review area, the Court noted that:

*572 Many states have enacted statutes that protect the proceedings and reports of hospital review committees from discovery although New Jersey has adopted a less protective statute. (Emphasis added.) Id. at 358, 492 A.2d 991.
The Peer Review process is not motivated by a purely altruistic desire to improve health care. However, the purpose of the process is self-evaluation and health care improvement. This Court must, therefore, characterize the Peer Review process as a self-critical process.
The public benefits from a Peer Review Committee which is free to express its opinions, evaluations, and criticisms. These statements provide the basis for change and improvement. To reveal such material would inhibit candor and stifle improvement. The opinions, criticisms, and evaluations contained within the Peer Review file come within the self-evaluation privilege and are absolutely protected.
The plaintiff has no "particularized need" of factual material contained in the Peer Review file if such material has already been supplied to the plaintiff. Therefore, defense counsel should review the entire Peer Review report and separate those items in the Peer Review file which are already in the possession of plaintiff's counsel. Defendant's counsel shall sign a certification as an officer of the court designating those items already in the possession of plaintiff.
Obviously, it is impossible for the plaintiff to establish a particularized need for materials the content of which she has no knowledge. Similarly, the Court is unable to determine a particularized need until after an examination of the material in question. Based on the foregoing and prior to submitting the entire Peer Review file to this Court for its in camera inspection, defendant's counsel is instructed as follows:
1. Highlight those portions which they assert constitute opinions, evaluations and criticisms;
2. Separate the material already in the plaintiff's possession;
3. Separate and identify the remaining material so that the Court might apply the McClain balancing test.
4. Submit the Peer Review file in its separated form to the Court for its in camera inspection.

*573 5. Submit defense counsel's certification as to materials already in the possession of plaintiff's counsel.
Plaintiff's counsel is to submit an order consistent with this opinion.