James TODD, III, et al., Plaintiffs,

v.

**SOUTH JERSEY HOSPITAL SYSTEM,**
**et al., Defendants.**

Civ. No. 91–4757 (JFG).

United States District Court,
D. New Jersey,
Camden Vicinage.

Dec. 21, 1993.

Cathy Neifeld, Wapner, Newman & Wigrizer, Cherry Hill, NJ, March G. Brecher, Wapner, Newman & Wigrizer, Philadelphia, PA, for plaintiffs.

Sherry Spencer, Giordano, Halleran & Ciesla, Middletown, NJ, for defendants Ann M. Budde, John H. Gould, Thomas J. Lonergan and Paul S. Cooper.

Susanne Bevacqua, Grossman & Kruttschnitt, Cherry Hill, NJ, for defendant South Jersey Hospital System.

David Bishop, Horn, Goldberg, Gorny, Daniels, Atlantic City, NJ, for defendants Edward S. Milner, Jr., M.D. and Philip D'Arrigo, M.D.

## OPINION

ROSEN, United States Magistrate Judge.

Presently before this court are two motions in this matter: plaintiffs' motion to compel the production of peer review materials pertaining to defendant Tol–Ung Yoon, M.D. (hereinafter "Yoon"), filed July 6, 1993,

and defendants' motion for a protective order barring disclosure of its Peer Review Organization's ("PRO") documents, filed November 12, 1993. For the reasons discussed herein, and having considered the written submissions of the parties and oral arguments had on the record on December 17, 1993, and on August 20, 1993, plaintiff's motion to compel shall be granted in part, except as to the PRO materials, and defendants' motion for a protective order as to the PRO materials shall be granted.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 20, 1990, the plaintiff, Michelle Todd, entered into the care of Dr. Tol-Ung Yoon ("Yoon"), an obstetrician who practiced medicine at South Jersey Hospital System's Bridgeton Hospital (hereinafter "Bridgeton"). Michelle Todd gave birth to James Todd, III, on June 16, 1990 at Bridgeton. Although Yoon was Michelle Todd's doctor, he was not present during labor or childbirth; instead Dr. D'Arrigo, who had not previously seen Michelle Todd as a patient, presided over the childbirth. Michelle Todd experienced complications during birth, and James Todd, III, was born with a number of physical and neurological disorders. The instant action was filed October 24, 1993.

Plaintiffs in this action are minor James Todd, III, and his natural parents, Michelle Todd and James J. Todd, Jr. Joined as defendants in this action are Yoon, Bridgeton, and Bridgeton administrators Philip D'Arrigo, M.D., Ann M. Budde, John M. Gould, M.D., Edward S. Milner, M.D., Thomas J. Lonergan, Paul S. Cooper, and South Jersey Hospital System (hereinafter "Administrators").

Plaintiffs argue that James Todd, III, suffered injuries as a result of improper medical techniques employed in response to Michelle Todd's complications. Plaintiffs offer two theories of liability. First, plaintiffs claim medical malpractice on the part of Yoon. Yoon was Michelle Todd's doctor; he was well acquainted with her medical profile and would have been able to correctly interpret the signs of breach birth early enough to perform a successful cesarian section. Plain-

tiffs contend that but for Yoon's unexplained absence, James Todd would not be starting life with a battery of physical and neurological problems.

Plaintiffs' second theory of liability is that Bridgeton's administration was negligent in failing to supervise Yoon. During discovery, plaintiffs received documents from Yoon's personnel file indicating that in the year leading up to James Todd's birth, "Yoon had been cited on twenty occasions for failing to respond to nurses calls and for failing to attend deliveries for his patients." (Plaintiffs' Brief at 2). Plaintiffs assert that the Bridgeton Administration should not have permitted Yoon to retain his OB/GYN privileges in light of his poor attendance record.

Plaintiffs motion to Compel Responses to Interrogatories and the Production of Documents concerns documents which plaintiffs seek in support of their second theory of liability. Plaintiffs have requested the following documents for the time period of January 1, 1989 through June 16, 1990: 1) minutes of Obstetrics Department Meetings in which Yoon's professional performance was discussed; 2) records pertaining to Yoon's hospital charts which were subjected to Quality Review; 3) criteria for diagnosis and procedures maintained in the Peer Review Office at Bridgeton; 4) each audit and review of Yoon's charts; 5) all Peer Review records pertaining to Yoon's professional conduct; 6) all Peer Review records pertaining to cesarean sections performed by Yoon; and 7) all Peer Review records pertaining to birth injuries sustained by babies delivered by Yoon.

There has been much confusion in this matter regarding the classification of the documents at issue in these motions. Counsel for all parties have used varying definitions for what turn out to be the same documents. To avoid further confusion, the following definitions shall govern in this opinion and order, and its enforcement:

*Peer Review Organization* (PRO): A specific statutorily-mandated organization, created and operated pursuant to 42 U.S.C. § 1320c, et seq.

*Utilization Review Committee:* A specific committee created to perform tasks respon-

sive of requirements under federal Medicare statutes.

*Other Hospital Departments and/or Committees:* Within the context of this action, other hospital departments and/or committees include *any* department or committee that is not specifically the aforementioned Peer Review Organization or Utilization Review Committee. These "other" non-PRO/non-utilization review departments and committees include within the scope of these motions, but are not limited solely to, the following: [1]

(1) Obstetrics Department (and any committee thereof);

(2) Quality Review Department;

(3) Quality Improvement Department; [2]

(4) Quality Improvement Board;

(5) Quality Assurance Committee;

(6) Medical Staff Quality Improvement Committee;

(7) Ancillary Department Quality Improvement Committee;

(8) Medical Executive Committee;

(9) Clinical Care Assessment Committee;

(10) Professional Affairs Committee; and

(11) Credentials Committee.

Plaintiffs assert that these documents are essential to the proof of their claim of administrative negligence against the hospital. Plaintiffs claim that their need for discovery outweighs any qualified privileges which defendants may assert as to the documents. Next, plaintiffs argue that any privileges asserted by defendants have been waived by their reliance on the requested documents in answers to deposition questions. In the alternative, if plaintiffs are not permitted to discover these documents, plaintiffs request an order barring defendants from using any information from these documents as evidence at trial.[3]

Defendants have responded that the documents are not discoverable because they are irrelevant. Defendants claim that Utilization Review Committee ("U/R Committee") documents are not discoverable as a matter of statutory law. Next, defendants assert that other Peer Review materials, such as Quality Assurance Committee materials, are protected by the *common law privilege of self-critical analysis*. Defendants also claim that all documents which pertain to the treatment of non-party patients are protected by the doctor-patient privilege. Finally, the defendants assert that in any event, disclosure of documents in the possession of a Peer Review Organization ("PRO"), created under federal law, is barred by 42 U.S.C. § 1320c–9, and have filed a motion for a protective order accordingly.

## II. LEGAL DISCUSSION

First, I will discuss defendants' argument that the information is undiscoverable because it is irrelevant. Next, I will analyze the privileges which defendants assert, beginning first with the Utilization Review Privilege, then moving to the common law privilege of self-critical analysis. I will then discuss the doctor-patient privilege. Finally, I will determine the extent to which 42

---

1. Again, a problem throughout the course of these motions has been a difficulty in pinning down specific terminology as to specific departments and committees. In an effort to avoid and further confusion and dispute as to semantics, the court is taking this extra step, and lists herein a variety of terms, some of which may indeed refer to the same department or committee.

2. Although representatives of hospital administration have at times used the terms interchangeably, and in association with one another, this court finds it clear that the hospital's Utilization Review Committee is a distinct and separate entity from its Quality Improvement Committee and/or Board. For example, in her certification dated August 26, 1993, Harriett Weber, who denominates herself as the "Director of Utilization

Review/Quality Improvement at South Jersey Hospital System," makes it clear that this is the case. After discussing the Quality Improvement Department, Ms. Weber goes on to states that "[t]he hospital *also* has a Utilization Review Committee...." Certification of Harriett Weber, 8/26/93, ¶ 7 (emphasis added).

3. Plaintiffs also argue that the Defendants have waived any privilege regarding these documents by virtue of their reliance upon the same during deposition testimony. I need not decide today whether the utilization review privilege, and self-criticism privilege are waivable, or if they in fact have been waived, as I find that the Plaintiffs' have demonstrated a compelling need for the information sought.

U.S.C. § 1320c–9 bars disclosure of otherwise relevant evidence.

### A. General Conclusions.

I hold today that the statutory utilization review privilege is absolute as to documents *created* by the utilization review committee; such documents are therefore not discoverable. However, plaintiffs' need for the information sought is compelling enough to overcome the common law privilege of self-critical analysis. In addition, I find that the doctor-patient privilege does not shield access to peer review materials regarding other patients' files as long as personal identifying material is redacted. Finally, I find that 42 U.S.C. § 1320c–9 bars disclosure of documents collected and generated by a PRO in performing its statutorily defined functions. However, that protection does not foreclose discovery if the same documents may be independently obtained from another committee or department.

### B. Relevance of the Materials Sought.

■ Discovery, generally, is governed by Rule 26, *Fed.R.Civ.P.*, which provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Where the material sought is relevant, the burden is on the party seeking nondisclosure or a protective order under *Fed. R.Civ.P.* 26(c), to show good cause for nondisclosure. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986); *Penthouse International, Ltd. v. Playboy Enterprises, Inc.,* 663 F.2d 371, 391 (2d Cir.1981).

■ Defendants' first argument, that the documents are not discoverable because they are irrelevant, is without merit. The documents requested not only could lead to admissible evidence, but are likely themselves to be directly relevant. Plaintiffs are requesting these documents to test the veracity of their claim. Plaintiffs' thesis is not merely that Yoon was tardy on occasion: plaintiffs argue that the quality of Yoon's medical practice decreased in a noticeable fashion and that the Administrators failed to take action against him. Clearly, plaintiffs intend to use the twenty times Yoon was cited for

being unavailable during delivery as evidence of the diminution in the quality of his medical care. While this evidence may be enough to convince a jury that Yoon should have been removed, plaintiffs may rightly search for other records establishing Yoon's decline in other areas of his professional career. There can be no question as to the relevancy of these documents.

### C. Assertions of Privilege.

■ Turning next to whether documents requested in discovery under *Fed.R.Civ.P.* 26 are privileged, I look first to *Fed.R.Evid.* 501. *See Goldinger v. Boron Oil Co.,* 60 F.R.D. 562 (W.D.Pa.1973), *aff'd,* 511 F.2d 1393 (3d Cir.), *cert. denied,* 423 U.S. 834, 96 S.Ct. 59, 46 L.Ed.2d 52 (1975). This rule reads, in pertinent part, that:

> [I]n civil actions and proceedings with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

*Fed.R.Evid.* 501. Under this rule, state law on privilege governs in a case such as this, brought under the court's jurisdiction in diversity. With this in mind I will address the privileges defendants assert in this instance.

### 1. Utilization Review Privilege.

■ The Utilization Review privilege is a separate statutory privilege created by *N.J.S.A.* 2A:84A–22.8. This statute provides, with few exceptions, that information and data obtained by utilization review committees cannot be disclosed:

> Information and data secured by and in the possession of utilization review committees established by any certified hospital or extended care facility in the performance of their duties shall not be revealed or disclosed in any manner or under any circumstances by any member of such committee except to:
>
> (a) a patient's attending physician,
>
> (b) the chief administrative officer of the hospital or extended care facility which it serves,

(c) the medical executive committee, or comparable enforcement unit, of such hospital or extended care facility,

(d) representatives of, including intermediaries or carriers for, government agencies in the performance of their duties, under the provisions of Federal and State law, or

(e) any hospital service corporation, medical service corporation or insurance company with which said patient has pertinent coverage under a contract, policy or certificate, the terms of which authorize the carrier to request and be given such information and data.

*N.J.S.A.* 2A:84A–22.8. *See Wei v. Bodner,* 127 F.R.D. 91, 98 (D.N.J.1989). The privilege created by virtue of this statute is extremely limited. It applies only to utilization review committees, a term defined in the statute. *Id.* (citing *Young v. King,* 136 N.J.Super. 127, 344 A.2d 792 (N.J.Super.1975)). The Utilization Review Committee is a specific committee created by the utilization review plan. The utilization review plan is a requirement of a hospital's participation under the Social Security Act, and its further participation in federal and state funded programs. *Young,* 136 N.J.Super. at 130, 344 A.2d 792 (Law Div.1975). In sum, the privilege is intended to encourage participation on the utilization review committees and to aid in the implementation of Medicare. *Id.*

▇ Defendants argue that this statute shields them from producing *any* document in the possession of the Utilization Review committee. I disagree. While clearly, certain documents are statutorily barred from discovery, others, I believe are not. Plaintiffs, on the other hand, have not argued that they fall under any of the exceptions specified in the statute. Plaintiffs have presented no authority for the proposition that utilization review materials are discoverable.

▇ New Jersey Courts long ago recognized that utilization review committee materials, unlike other peer review committee materials, are absolutely privileged against court discovery. *Young,* 136 N.J.Super. at 130, 344 A.2d 792 (Law Div.1975). The New Jersey Supreme Court supported this conclusion by noting that Courts probably do not fit within the government agency exception included in *N.J.S.A.* 2A:84A–22.8(d). *See also McClain v. College Hospital,* 99 N.J. 346, 359, 492 A.2d 991 (1985) (*quoting Young,* 136 N.J.Super. 127, 344 A.2d 792). It is clear that documents and materials created within the Utilization Review committee are protected against plaintiffs' discovery. However, other Peer Review Committees are not covered by the special privilege created for the Utilization Review Committee: "[t]he specific and special protection the Legislature has afforded utilization review committees by *N.J.S.A.* 2A:84A–22.8 should not be broadened to include other committees and thus frustrate our discovery rules." *Young,* 136 N.J.Super. at 130, 344 A.2d 792 (Law Div.1975) *accord Bundy v. Sinopoli,* 243 N.J.Super. 563, 569, 580 A.2d 1101 (Law Div.1990). Documents such as medical records and hospital charts examined by the Utilization Review Committee are not protected by the Utilization Review privilege by virtue of their perusal by the Committee, nor are they protected from discovery by virtue of their possession by the utilization review committee. Only the notes, audits, recommendations and reports that are the product of the utilization review committee are privileged under the statute.

### 2. "Critical Self–Analysis" Privilege.

▇ The "critical self-analysis" privilege has been recognized to protect documents which reflect an internal self-analysis or self-criticism. *See Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. 249 (D.D.C.1970), *aff'd* 479 F.2d 920 (D.C.Cir.1973). *See also Loigman v. Kimmelman,* 102 N.J. 98, 505 A.2d 958 (1986). The purpose of this privilege is to encourage self-evaluation and the benefits that may flow therefrom, and to avoid the chilling effect upon such self-analysis which would result from complete disclosure. *See also Hardy v. New York News, Inc.,* 114 F.R.D. 633 (S.D.N.Y.1987); *Penk v. Oregon State Bd. of Higher Education,* 99 F.R.D. 511 (D.Or.1983). Only evaluative opinions, and not the facts disclosed in the course of self-evaluation, may be protected. *Wei,* 127 F.R.D. at 100. Courts have held

that "[c]onfidentiality and the 'public need for confidentiality' are the *sine qua non* of effective internal self-critical analysis." *Wylie v. Mills*, 195 N.J.Super. 332, 339, 478 A.2d 1273 (Law Div.1984); *Wei*, 127 F.R.D. at 100. Because frank self-criticism is important if organizations are to successfully pursue self-improvement, courts have recognize a limited privilege even when no statutory authority exists for such a privilege. *Wylie*, 195 N.J.Super. at 339, 478 A.2d 1273. This privilege applies to the opinions and reports of peer review committees, such as the Quality Improvement Committee at Bridgeton. *Bundy v. Sinopoli*, 243 N.J.Super. 563, 570, 580 A.2d 1101 (Law Div.1990).

■■■ While this privilege has been recognized in some circumstances, it is not absolute. Where the need for this information is substantial and disclosure would have little effect on self-analysis, discovery has been compelled. *Wei*, 127 F.R.D. at 100. The purpose for the existence of the privilege must at all times be kept in mind when evaluating its application: the critical self-analysis privilege exists entirely as a public policy concern; it is not personal to the holder. Thus, the privilege may be punctured by a showing of "particularized need that outweighs the public interest in confidentiality." *McClain*, 99 N.J. at 351, 492 A.2d 991; *Bundy*, 243 N.J.Super. at 571, 580 A.2d 1101.

■■■ In determining whether a party has made the required showing under the privilege, courts balance the following three factors: "1) the extent to which the information may be available from other sources; 2) the degree of harm that the litigant will suffer from it's unavailability; and 3) the possible prejudice to the agency's investigation." *McClain*, 99 N.J. at 351, 492 A.2d 991; *see also Bundy*, 243 N.J.Super. at 571, 580 A.2d 1101.

■■■ In the present case, plaintiffs have succeeded in demonstrating the particularized need required for the disclosure of other peer review materials. The information sought is unavailable from other sources. The documents requested contain the commentary of Yoon's peers regarding the quality of his medical practice. These documents also contain aggregate data which will show whether or not there was any appreciable change in the rates of complication and injury in Yoon's patients over the relevant time period. Plaintiffs will be seriously hampered in their attempt to establish administrative negligence if they can not discover these materials. Plaintiffs need to know if there were any problems with the quality of Yoon's care other than those associated with his tardiness. In asserting administrative negligence, plaintiffs must know exactly when, if ever, the hospital's administrators began questioning Yoon's competence, as well as why the Administrators did not act earlier to remove Yoon. It is also clear that the need of the plaintiffs for these materials is genuine and particularized, and it is equally clear that this is not simply a "fishing expedition". Documents previously discovered in this case indicate that Yoon was reported unavailable on at least twenty separate occasions in a one-year period.[4] This evidence supports the inference that there might have been more serious problems with Yoon's professional behavior during that time period.

■■■ In this court's opinion, any minor disruption in the function of the Quality Improvement Committee's activities is outweighed by the particular public good which is served by disclosure in this circumstance. Further, any "chilling effect" is mitigated by three factors. First, peer review committee members are immune from personal liability resulting from their activities on the committee, so long as their comments during review are not arbitrary or discriminatory. *See* N.J.S.A. 2A:84A–22.10. Second, peer review committees will continue to be attractive to hospital administrators as an effective quality control tool, even if their materials are occasionally discoverable in cases against the hospital. Finally, revealing Dr. Yoon's review will in no way compromise Dr. Yoon because Yoon no longer practices medicine at Bridge-

---

4. In addition, plaintiffs' counsel has submitted the supplemental reports of two expert witness who have concluded that based upon their review of the record, Dr. Yoon should not have been practicing medicine at Bridgeton during the period of the Todd birth.

ton, or anywhere else in the United States as far as the parties have been able to discern.[5]

In summary, peer review committees, like the Quality Improvement Committee at Bridgeton, serve an important public function by helping to insure that high standards of health care are maintained. While this function is usually best served when the committee's privacy is preserved, when there is evidence suggesting that the administration of a hospital might be failing to respond to the information and opinions generated by these committees, the public is better served and the purpose of the committee more effectively advanced by permitting disclosure. Indeed, if the administration of a hospital fails to heed warning signals and serious injury results, the Quality Improvement Committee may be deemed to have failed its mission. While disclosure may not have been appropriate had plaintiffs' complaint alleged solely medical malpractice, since plaintiffs' complaint alleges both medical malpractice and administrative negligence, it is clearly appropriate in this circumstance. Moreover, plaintiffs have produced evidence which might support a prima facie showing of possible administrative negligence, not merely unsubstantiated allegations of administrative negligence. For these reasons, I find that discovery of these materials is in the public's best interest.

Because plaintiffs have effectively met their burden in overcoming the qualified privilege of self-criticism, plaintiffs are entitled to see all peer review materials regarding Yoon's performance while at Bridgeton.

### 3. *Physician–Patient Privilege.*

■ The third privilege asserted which this court must address is the doctor-patient privilege. New Jersey's doctor-patient privilege was created by statute in 1968, and it serves to protect confidential communications made in the course of treatment between a patient and his or her physician:

[A] person, whether or not a party, has a privilege in a civil action ... to refuse to disclose, and to prevent a witness from disclosing, a communication, if he claims

the privilege and the judge finds that (a) the communication was a confidential communication between patient and physician,
...

*N.J.S.A.* 2A:84A–22.2.

New Jersey courts have construed this privilege narrowly. *See, e.g., Osterman v. Ehrenworth*, 106 N.J.Super. 515, 256 A.2d 123 (Law Div.1969) (compelling answers to interrogatories requiring commentary about defendant doctor's treatment of other patients with the names of non-party patients redacted). Under *Osterman,* the "names and addresses of other patients conjoined with the nature of their illnesses and treatment" are protected by the doctor-patient privilege. *Id.,* 106 N.J.Super at 525, 256 A.2d 123. Thus, the privilege is honored where patient information is revealed *sans* the ability to link it to specific individuals.

■ The privilege is not absolute, and "must be subrogated to more important interests of society." *Wei,* 127 F.R.D. at 97 (citing *McIntosh v. Milano,* 168 N.J.Super. 466, 490, 403 A.2d 500) (1979 Law Division)). New Jersey courts have held that since the privilege "obstructs the search for truth, [it] must be construed restrictively." *State v. Bodtmann,* 248 N.J.Super. 100, 101, 590 A.2d 259 (Law Div.1990) (citing *State in Interest of M.P.C.,* 165 N.J.Super. 131, 397 A.2d 1092 (App.Div.1979)). The privacy interests protected by the doctor-patient privilege are adequately maintained when proper safeguards are used to otherwise protect the patients' privacy, such as the redaction of personal identifying information from medical records. For example, when the information is necessary and cannot be gathered from other sources, removal of otherwise confidential information from the records sought in the discovery request protects the non-party patients and justifies disclosure. *Wei,* 127 F.R.D. at 97.

■ In this instance, the plaintiffs' particular need for the information requested is clear. With the proper protections in place to safeguard the individual identities of non-

---

5. Dr. Yoon, who is now pro se in this matter, has not participated in discovery in this case, and his whereabouts are currently unknown to the parties or this court.

party patients, the peer review documents can be disclosed. Accordingly, and following the direction of the District Court in *Wei*, the disclosure of the patient records at issue in this motion shall be compelled, subject to redaction of all identifying personal information of non-party patients,[6] in order to protect those patients' privacy interests. With these protections in place, the policies underlying the doctor-patient privilege are safeguarded, and the plaintiffs' need for full and adequate disclosure is also preserved.

### 4. Federal Law as a Bar to Discovery of Peer Review Materials.

Finally, the defendants claim that many of the documents that the plaintiffs seek are in the possession of an outside Peer Review Organization, created pursuant to federal statute. In their view, the immunity from discovery afforded those documents is created under federal law, and exists in addition to any privilege which exists under state law.

The Peer Review Organization is the statutory creation of the Peer Review Improvement Act of 1982 ("The Act"), 42 U.S.C. § 1320c, et seq. (amended 1990), and is implemented in this state as the Peer Review Organization of New Jersey, Inc. The Act mandates the performance of the following functions by the Peer Review Organization of New Jersey:

> The organization shall review some or all of the professional activities in the area ... of physicians and other health care practitioners and institutional and noninstitutional providers of health care services in the provisions of health care services and items for which payment may be made ... for the purpose of determining whether—
>
> (A) such services and items are or were reasonable and medically necessary ...;
>
> (B) the quality of such services meets professionally recognized standards of health care; ...

42 U.S.C. § 1320c–3(1). In essence, the Act functions as a quality and fiscal check upon the medical activities of physicians and institutions which provide health care services under the Medicare and Medicaid programs.

Section 1160 of the Act prohibits disclosure of all but a select class of materials, under penalty of imprisonment and fines, and reads in part:

> Any data or information acquired by any such organization in its exercise of its duties and functions shall be held in confidence and shall not be disclosed to any person except—
>
> (1) to the extent that may be necessary to carry out the purposes of this part,
>
> (2) in such cases and under such circumstances as the Secretary shall by regulations provide to assure adequate protection of the rights and interests of patients, health care practitioners, or providers of health care, or
>
> (3) in accordance with subsection (b) of this section.

42 U.S.C. § 1320c–9(a). Subsection (b) articulates several exceptions to the nondisclosure rule. According to the defendants, under the statute they are not free to disclose the materials which plaintiffs seek, even if they were inclined to do so, as the discovery sought does not fit into a statutory or regulatory exception. Such disclosure, defendants assert, would expose them to civil liability. Nondisclosure is thus not a "privilege" to be asserted, in this view, but an affirmative duty under the law. In making this argument, the defendants rely heavily upon the holding in *General Care Corp. v. Mid–South Foundation*, 778 F.Supp. 405 (W.D.Tenn.1991), and upon the plain language of 42 U.S.C. § 1320c–9. The statute, which was enacted in 1990, specifically imposes fines and penalties for disclosure. I will address the statute's implications first.

Subsection (a) of the statute states that the prohibition upon disclosure refers to "any data or information acquired by [the organization]," without particularizing whether that protection runs to the information itself (if otherwise independently obtainable), or simply to prevent a party in discovery from obtaining the materials utilized by the PRO

---

**6.** Such redacted information shall include the patient's name, and where and if present, address, social security number, health insurance numbers, and medical record number.

directly from the PRO. 42 U.S.C. § 1320c–9(a). Furthermore, subsection (d), which prohibits disclosure of patient records, reads, in pertinent part, that "[n]o patient record in the possession of [a PRO] ... shall be subject to subpoena or discovery proceedings in a civil action." 42 U.S.C. § 1320c–9(d).

■ The statute and regulations are silent as to whether copies of the same records, in the hands of an independent source, are similarly protected. On the face of the statute 'however, in this court's view, there is no indication that the statute was intended to have any effect upon the discoverability of such materials at their original source. Indeed, again, in this court's view as the case law dealing with this statute is slim, a reasonable construction of the statute does not lead to the conclusion that the acquisition by a PRO of particular materials extends the protection of those materials in the possession of any entity beyond the PRO.

*General Care* is the only federal decision which has ruled on this question following federal law, rather than state law, since the 1990 amendments to the Peer Review Improvement Act. In *General Care,* the district court clearly read 42 U.S.C. § 1320c–9 as a bar to discovery of the organizations files. I am in full agreement on this point. The district court found that the very terms of the statute, and the rules promulgated pursuant to it, prevented disclosure except in narrow, explicit circumstances.

In *General Care,* the daughter of a former patient alleged malpractice leading to her father's death, and sought to obtain the medical records used in the peer review organization's investigation along with minutes and memoranda relating to investigation itself and the subsequent findings of the PRO. The hospital did not object to the daughter obtaining the medical records, and the court never addressed this issue. Putting aside whatever rights a patient might have to obtain his or her own medical records directly from the health care provider, the law and regulations specifically provide that the patient or a designated representative (in *General Care,* the daughter as her late father's administratrix) may obtain these documents, upon written request, from the Peer Review Organization itself.

The court in *General Care,* did, however, determine that the hospital could not disclose any of the other requested information regarding the actual proceedings of the PRO. This is consistent with the underlying purpose of the federal and state peer review statutes, which is to encourage doctors to evaluate their peers honestly, without fear that the proceedings might later be used in a lawsuit. *See, e.g., Morse v. Gerity,* 520 F.Supp. 470, 471 (D.Conn.1981).

Finally, the court in *General Care* was not asked to, and never did address the issue of whether the prohibition on subpoenaing records directly from the Peer Review Organization prevented the discovery of those same records from other independent sources.

The defendants have asked this court to find that documents which are jointly possessed by the PRO *and* the hospital (including its own in-house committees) are not discoverable from the non-PRO sources. Neither the statute nor *General Care* directly addresses this question, but as has already been noted, in this court's view, this is because the Peer Review Protection Act is intended to do just what its title suggests, protect the inner workings of the PRO. It protects the functions of federally-created peer review organizations. It was never designed as a mechanism to forestall discovery from any other source.

This court finds, therefore, that the Peer Review Protect Act bars production of documents solely as they exist *in the possession* of the Peer Review Organization. The PRO is prevented from turning over such documents, outside the scope of the statutory and regulatory exceptions. However, the statute does not on its face, nor does this court believe it was intended to, bar the production of such materials as they exist in the possession of an non-PRO source. It is the deliberations, methods and files employed and possessed, and/or generated by the Peer Review Organization which are absolutely immune to discovery. This immunity does not run to other sources, even if the information they possess is identical.

■ The text of 42 U.S.C. § 1320c–9 does not create a derivative immunity for hospitals and in-house committees which serve as the source of the PRO's information. These outside sources must rely on their own statutory and common law privileges and immunities, if and to the extent that they may exist and apply, to prevent discovery. To hold otherwise would encourage health care providers to file a copy of every document they have with their PRO in an attempt to avoid and to obstruct all legitimate discovery in any litigation.[7] Although not dealing with the same federal statute at issue here, the court in *Morse*, 520 F.Supp. 470 (D.Conn.1981), made a similar observation under a state statute. As here, the case arose under the district court's diversity jurisdiction, but involved an in-house "peer review organization" rather than a federally-mandated independent panel. The court found that Connecticut law governed the question of privilege with respect to documents pertaining to Peer Review proceedings. *Id.* It then went on to hold that that state's law, like the current federal law, was highly protective of Peer Review proceedings, and that no discovery could be obtained from them directly. However, he went on, "[i]n so holding, the court does not preclude plaintiff from employing other discovery devices to elicit in a different form any relevant information that may be contained in the privileged materials." *Id.* The same principle applies here.

■ Accordingly, the materials generated by the Peer Review Organization in pursuit of its statutory function are not subject to discovery. Furthermore, no document collected and held by that body is subject to production directly from the Peer Review Organization. This prohibition against disclosure, however, is limited to materials as they exist in the possession of the PRO. To the extent that the same information and materials may be obtained from other sources, 42 U.S.C. § 1320c–9 does not apply. Discovery may be pursued and obtained from such other sources, to the extent permitted in consideration of other privileges, as previously discussed in this opinion.

### D. Reliance Upon Protected Materials in Defense.

■ A final question is raised by these motions which must be addressed. This is the question of whether materials herein shielded from discovery, such as PRO materials (not available from another committee), or materials created by the Utilization Review Committee, and hence unavailable to the plaintiff, may be relied upon by defendants in furtherance of their defense. This question, however, can be dealt with fairly simply by considering what effect such reliance would have within the context of waiver. As a general matter, materials which are found to be shielded from discovery, e.g., because of their confidential or privileged status, may only thereafter be utilized and otherwise disclosed in a proceeding, such as in the furtherance of a defense, if a waiver of the confidence or privilege is possible and has occurred.

For example, documents to which a party claims protection from discovery based upon the attorney-client privilege, cannot thereafter be used in the furtherance of that party's defense without that party waiving the privilege. Under *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357 (D.Mass. 1950), the formulation of the privilege adopted by the Third Circuit, *see In re Grand Jury Investigation*, 599 F.2d 1224 (3d Cir.1979), applies "only if ... the communication was made [to the attorney] without the presence of strangers [and] has ... not been waived by the client." *United Shoe*, 89

---

7. The Peer Review Organization opposing discovery in *General Care* apparently realized this. The movants in that case sought a variety of types of information, including records possessed by the hospital, which were also used by the Peer Review Organization. The organization objected only to discovery of its methods, activities, documents that it generated, and files it possessed. It did not, and could not, object to discovery from the hospital itself. Any privilege over those files was for the hospital to assert, on their own privilege grounds, and not the Peer Review Organization. Additionally, counsel for the defendants admitted as much to the court at oral argument, and conceded that non-PRO created documents, such as files of other committees or departments, were not barred from production merely because they were also in the possession of the PRO and non-discoverable *from* the PRO.

F.Supp. at 358–59 (cited by *Barr Marine Products Co., Inc. v. Borg–Warner Corp.*, 84 F.R.D. 631, 633 (E.D.Pa.1979)). The attorney-client privilege, it is clear from the cases, can be deemed waived "by pleading privileged material as a defense [by] the party resisting discovery." *Barr Marine Products*, 84 F.R.D. at 635. *See also Teachers Insurance & Annuity Association v. Shamrock Broadcasting Co.*, 521 F.Supp. 638 (S.D.N.Y. 1981); *Jonathan Corp. v. Prime Computer, Inc.*, 114 F.R.D. 693 (E.D.Va.1987); *Smith v. Montgomery County*, 573 F.Supp. 604 (D.Md.1983).

Use of such protected materials by the holder of a privilege, of course, would constitute waiver. Under such a circumstance, it is clear under the rules of discovery, and in a general consideration of fairness, that the party could not at the last moment before trial, or at trial, suddenly determine to waive the privilege and begin relying upon those materials in its defense. If a party uses materials in the pursuance of its defense, to which it holds a privilege or as to which some bar to production otherwise exists, the waiver of the privilege and the production of such documents within the ordinary course of discovery must take place. As with the attorney-client privilege, the possessor of the privilege must, in effect, respect that privilege him or herself, and not act to disclose such privileged information. To both rely upon a privilege and at the same time rely upon the privileged information in a defense is a result which no privilege, neither attorney-client nor self-critical analysis can support.

In the instant circumstance, the plaintiffs have expressed concern in their submissions that the defendants have relied or shall rely upon, in their defense against the claim of administrative negligence, materials which this court may hold non-discoverable in these motions. Defendants, on the other hand, state that plaintiffs are mistaken about the materials which they have heretofore placed reliance upon. Defendants also assert that they have not relied upon any of the PRO materials, and only upon the other non-PRO committee or department materials the subject of the motion to compel.

The simple answer is, of course, as already noted, that defendants cannot both stand upon and assert a privilege, and then rely upon any such privileged information in a defense, while expecting that the privilege can continue to shield the information from the plaintiffs. Where this opinion finds that the plaintiffs have overcome privilege for other reasons, this discussion of waiver is, naturally, of no moment. Where materials have been found to be privileged and protected, as with those materials created by the Utilization Review Committee, the defendants themselves must hold the privilege inviolate if they seek to rely upon it. If it should appear, in the remaining course of discovery, or at trial, that the defendants intend to rely in their defense upon materials to which plaintiff is forbidden access due to privilege, plaintiffs shall be free to apply to the court at that time for an appropriate equitable remedy. Fundamental fairness and due process demand no less.

Naturally, and has already been discussed, the defendants shall themselves not be able to use or otherwise disclose or waive privilege as to the PRO materials. The PRO materials, as noted earlier, are not protected by a "privilege" waivable by defendants, they are statutorily barred from production. Materials contained uniquely within the PRO, such as documents it has created, and which are not otherwise obtained, may not be disclosed by defendants, and consequently may not be used in the pursuance of their defense. Again, any attempt by defendants to reply upon such materials statutorily barred from production, may be responded to at such time by an appropriate motion on the part of the plaintiffs.

### III. CONCLUSIONS

Accordingly, and in consideration of the foregoing discussion, it is the determination of this court that the plaintiff's motion to compel shall be *GRANTED IN PART* and *DENIED IN PART*. Materials in the possession of the PRO, either created by or collected by the PRO, shall not be produced. Materials created by the Utilization Review Committee shall not be produced, but materials in its possession obtained from other

sources shall be produced in accordance with plaintiffs' requests. Materials created by and in the possession of other hospital departments and committees, shall be produced in accordance with plaintiffs' discovery requests. Materials which relate to non-party patients shall have identifying information redacted in accordance with this opinion.

The attached order shall be entered.

### *ORDER*

This matter having come before the court upon the motion of plaintiffs for an order compelling discovery, and the motion of defendants for a protective order; and the court having considered the submissions of the parties; and having considered the oral argument had on the record on December 17, 1993 and on August 20, 1993; and for good cause shown;

IT IS this 21st day of December, 1993 hereby

*ORDERED* that the plaintiffs' motion to compel discovery shall be *GRANTED IN PART* and *DENIED IN PART*; and

IT IS FURTHER *ORDERED* that documents created by and/or in the possession of the hospital's Peer Review Organization ("PRO") *shall not* be produced. Documents not the creation of the Peer Review Organization, although in its possession, may not be obtained from the PRO, but may be obtained from other sources, to the extent consistent with this opinion; and

IT IS FURTHER *ORDERED* that documents created by the Utilization Review Committee *shall not* be produced. Documents in the possession of the Utilization Review Committee, which are not the product of that committee's work, *shall* be produced; and

IT IS FURTHER *ORDERED* that documents created by or in the possession of other hospital committees and departments, responsive to this motion, *shall* be produced, whether or not the product of that committee or department's work; and

IT IS FURTHER *ORDERED* that any materials which relate to non-party patients shall have identifying information redacted in

accordance with the requirements stated in this opinion; and

IT IS FURTHER *ORDERED* that the defendants' motion for a protective order as to the documents created by and/or in the possession of the hospital's Peer Review Organization is *GRANTED.*