# IN THE SUPREME COURT OF IOWA

No. 10–0971

Filed March 9, 2012

**MARK D. HALL,**

Appellee,

vs.

**BROADLAWNS MEDICAL CENTER,**

Appellee,

and

**DES MOINES REGISTER** and **TRIBUNE COMPANY,**

Appellant.

---

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

The Des Moines Register and Tribune Company asserts the district court erred in holding an internal audit report created by Broadlawns Medical Center is not a public record subject to disclosure under the Iowa Open Records Act. **AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

Michael A. Giudicessi of Faegre Baker Daniels LLP, Des Moines, for appellant.

Mark E. Weinhardt and Holly M. Logan of Weinhardt & Logan, P.C., Des Moines, for appellee Hall.

Thomas A. Finley and Stacie M. Codr of Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, P.C., Des Moines, for appellee Broadlawns Medical Center.

**APPEL, Justice.**

In this case, we consider whether an internal audit created by Broadlawns Medical Center as a result of the theft of drugs by an employee is a public record under the Iowa Open Records Act. The district court concluded that, because the internal audit was provided to the Iowa Board of Pharmacy in order to assist in its investigation of licensing matters arising from the theft, the internal audit amounted to investigative materials in the hands of a licensing board under Iowa Code section 272C.6(4) (2009) and was not subject to disclosure. Upon our review of the facts and law, we conclude that the internal pharmacy audit is a public record, not a confidential record, and that other statutory exceptions asserted to prevent public disclosure are inapplicable. As a result, we reverse in part, affirm in part, and remand the matter to the district court.

## I.  Procedural and Factual Background.

This case arises out of a dispute involving Broadlawns Medical Center (Broadlawns); Mark Hall, a licensed pharmacist in charge of the pharmacy at Broadlawns; and the Des Moines Register and Tribune Company (Register).

The dispute arose after police in late September 2008 arrested a pharmacist employed by Broadlawns on suspicion of operating a motor vehicle while intoxicated. During an interview with law enforcement authorities, the pharmacist stated she diverted prescription medications, including controlled substances, from Broadlawns. Broadlawns discharged the pharmacist in early October 2008. The Iowa Board of Pharmacy (board) issued an emergency order suspending the pharmacist's license indefinitely.

After taking its emergency action, the board commenced an investigation as a result of the incident. During its investigation, the board contacted Mark Hall. Hall was an employee of Cardinal Health Care, which had a contract with Broadlawns to provide pharmacy services to Broadlawns. Pursuant to the contract, Hall was the pharmacist in charge at Broadlawns. As part of its investigation, the board asked Hall to provide records from the Broadlawns pharmacy so that the board could do an audit. Hall cooperated with the board's investigation and provided the requested documents.

At this point, Hall decided to conduct an internal audit of Broadlawns pharmacy, which was completed in December 2008. When asked why he performed the internal audit, Hall stated:

> I wanted immediate answers. I didn't want to wait for somebody else to do an audit and wait for their results. If there was action that needed to be taken, then I wanted to take it. Also, I felt it was the responsible thing to do.

Once the internal audit was completed, Hall contemporaneously provided a copy to the Broadlawns chief medical officer, Dr. Vincent Mandracchia; to the operations manager at Cardinal Health, Ed Nold; and to the board. Hall stated that he provided a copy of the internal audit to the board because the information was relevant to its investigation and Hall thought it important that the board have complete information.

About a year after these events, the board filed charges against Hall and Broadlawns. The board charged Hall with lack of competency and inadequate controls for allegedly failing to maintain an adequate record of controlled substance transactions. The board's statement of charges included a reference to the internal audit provided to the board by Hall and stated that the internal audit confirmed shortages of controlled substances at Broadlawns.

The statement of charges filed by the board against Hall and Broadlawns is a public record. Upon reviewing the statement, the Register on November 23, 2009, sought to obtain Hall's audit under Iowa's Open Records Act. Broadlawns refused to release the audit, however, claiming it was confidential and exempt from disclosure. Further, in order to prevent potential disclosure, Hall, on December 11, 2009, filed an action against Broadlawns seeking declaratory and injunctive relief to prevent Broadlawns from releasing the internal audit. On December 29, 2009, the district court entered a temporary injunction restraining Broadlawns from releasing the internal audit. The Register intervened in the litigation on January 4, 2010.

Following an evidentiary hearing, the district court concluded that Iowa Code section 272C.6(4) barred the release of the audit because "[t]he statutory objective of assuring a free flow of information is better met by extending the confidentiality contained within Iowa Code [section] 272C.6(4) to the audit report." As a result, an injunction barring release of the internal audit was granted. The Register appealed.

On appeal, both Hall and Broadlawns assert that the district court properly concluded the audit is protected from disclosure under Iowa Code section 272C.6(4). Hall further asserts that, even if Iowa Code section 272C.6(4) is inapplicable, the audit is exempt from disclosure pursuant to Iowa Code sections 22.7(61) and 22.8. Further, Broadlawns argues even if the internal audit is found to be a disclosable public record, Broadlawns should not be assessed costs and attorney fees under Iowa Code section 22.10 because of the safe harbor provisions of Iowa Code section 22.8(4).

The Register counters that because the internal audit was not part of a complaint or the investigative work product of the board, it is not

within the scope of Iowa Code section 272C.6(4). Further, the Register asserts that Hall failed to meet the elements under Iowa Code section 22.7(61).

For the reasons expressed below, we conclude that, under the facts and circumstances of this case, the internal audit is not confidential under Iowa Code section 272C.6(4). We further conclude that Hall has failed to make the requisite showing for an injunction to restrain examination of a public record under Iowa Code sections 22.7(61) and 22.8.

## II. Standard of Review.

Actions brought under the Iowa open records law are triable in equity. In this equity trial, our review of the issues properly raised in this appeal is de novo. *US West Commc'ns, Inc. v. Office of Consumer Advocate*, 498 N.W.2d 711, 713 (Iowa 1993). The district court's statutory interpretation of Iowa Code section 272C.6(4) is reviewed for correction of errors at law. *DeLaMater v. Marion Civil Serv. Comm'n*, 554 N.W.2d 875, 878 (Iowa 1996).

## III. Discussion.

**A. Applicability of the Confidentiality Provisions of Iowa Code Section 272C.6(4).** We first consider whether the confidentiality provisions of Iowa Code section 272C.6(4) apply to the internal audit. We begin our discussion by considering the scope of the statute as reflected in the language of the statute and the policies underlying it. We then analyze whether the facts of this case fall within the scope of section 272C.6(4).

Iowa Code chapter 272C generally relates to the regulation of a lengthy laundry list of licensed professionals. The chapter establishes a framework for the operation of licensing boards—including provisions

related to the authority of licensing boards, the duties of licensing boards, and certain procedures regarding the manner in which hearings are conducted. *See* Iowa Code §§ 272C.3–.4, .6. Among other things, the chapter authorizes a licensing board to establish and register peer review committees. *Id.* § 272C.3(1)(*h*).

Iowa Code section 272C.6(4) provides, in relevant part:

> 4. In order to assure a free flow of information for accomplishing the purposes of this section . . . all complaint files, investigation files, other investigation reports, and other investigative information in the possession of a licensing board or peer review committee acting under the authority of a licensing board or its employees or agents which relates to licensee discipline are privileged and confidential, and are not subject to discovery, subpoena, or other means of legal compulsion for their release to a person other than the licensee and the boards, their employees and agents involved in licensee discipline . . . .

At first blush, it may appear that the statute only protects information "in the possession of a licensing board or peer review committee." *See id.* § 272C.6(4). As a result, it could be argued that information in the possession of third parties is simply not protected under the statutory language.

Though appealing for its simplicity, the interpretation of the statute based on possession is problematic. For instance, if a complaint is filed with a licensing board, it seems doubtful that the document in the hands of the licensing board is confidential, but the very same document in the possession of the person who provided the complaint or in the hands of a challenged professional responding to the complaint, is not. Similarly, if an expert whose opinion has been requested by a licensing board submits an expert report to the board, it seems unlikely that the copy of the report in the board's file is protected, but a copy of the same report in the hands of the expert is not.

If the purpose of Iowa Code section 272C.6(4) is to "assure a free flow of information" for accomplishing the purposes of peer review and discipline, it seems at least doubtful that the legislature intended the confidentiality provision to apply simply to copies of documents that are physically possessed by the licensing board and not to the same copies in the hands of persons working with the licensing board or peer review committee. Thus, a plausible argument may be made that the statutory privilege for information possessed by the board does not run solely to the board as possessor of a particular document but rather runs with the information provided to the board that allows it to perform its statutory functions.

There is no controlling Iowa case law on the precise question posed in this case. In *Doe v. Iowa State Board of Physical Therapy & Occupational Therapy Examiners*, 320 N.W.2d 557, 561 (Iowa 1982), we came to the common sense conclusion that once a disciplinary action has been initiated, the licensee subject to the action is entitled to the underlying documents in the hands of the licensing board. The case involves the narrow issue of providing the licensee with documents and does not address the broader issue of availability of information to the public. *See Doe*, 320 N.W.2d at 561. In *Cawthorn v. Catholic Health Initiatives Iowa Corp.*, 743 N.W.2d 525, 528 (Iowa 2007), we considered whether information in the possession of a peer review committee could be used in a medical malpractice action. We concluded that, under the terms of the statute involved in that case, it could not. *Cawthorn*, 743 N.W.2d at 528. Like *Doe*, however, *Cawthorn* did not address the specific issue in this case, namely, whether records in the possession of third parties that contain information being considered by a licensing board as part of its investigation are shielded from public disclosure.

At least one federal circuit has considered the degree to which a statute protects confidentiality even though documents are in the hands of third parties. In *Armstrong v. Dwyer*, 155 F.3d 211, 213–14 (3d Cir. 1998), the Third Circuit considered whether a malpractice plaintiff could subpoena peer review documents that were in the hands of the defendant. The federal statute in question protected from disclosure medical records "in the possession" of peer review organizations. *See id.* (quoting 42 U.S.C. § 1320c-9(d) (1994)).[1] The Third Circuit concluded that the statutory bar against discovery "runs with the documents or information, not with the organization or individuals who happen to posses the documents or information at any given time." *Armstrong*, 155 F.3d at 220. The Third Circuit reasoned that the statutory protections would be a nullity if documents in the hands of the peer review organization were protected while the same documents in the hands of the subject physician were subject to disclosure. *Id.*

On the other hand, the court in *Todd v. South Jersey Hospital System*, 152 F.R.D. 676 (D.N.J. 1993), *abrogated by Armstrong*, 155 F.3d at 220, recognized other risks in interpreting the federal peer review statute. In *Todd*, the court held that medical records in the possession of a health care provider that were subsequently provided to a peer review organization were not automatically protected from disclosure. *Todd*, 152 F.R.D. at 686. "To hold otherwise," explained the court, "would encourage health care providers to file a copy of every document" with a peer review organization "in an attempt to avoid and to obstruct all legitimate discovery in any litigation." *Id.* at 687.

---

[1]The statute states: "No patient record in the possession of an organization having a contract with the Secretary under this part shall be subject to subpoena or discovery proceeding in a civil action." 42 U.S.C. § 1320c-9(d).

While the federal law related to peer review organizations is not identical to Iowa Code section 272C.6(4), we think *Armstrong* and *Todd* demonstrate the need for a nuanced position regarding what information is protected by privileged statutes related to licensee discipline or peer review. On the one hand, the mere fact that a copy of the document is possessed by a third party should not be determinative of the privilege issue if the privilege is to have any substance. On the other hand, the providing of information to a licensing body or peer review committee should not transform otherwise discoverable information into privileged material.

Wigmore handles the problem by dividing documents possessed by peer review organizations, which by analogy are similar to licensing boards, into three categories. The first category consists of documents ordinarily generated by the organization that reflect internal deliberations and functions of the reviewing body. Edward J. Imwinkelried, *The New Wigmore: A Treatise on Evidence* § 7.8.2, at 1375–76 (2010) [hereinafter Wigmore]. These documents are at the core of statutory protection. We have held that such documents are privileged under Iowa Code section 272C.6(4). *See Cawthorn*, 743 N.W.2d at 528.

The second category of documents identified by Wigmore is comprised of preexisting documents that are submitted to the reviewing body. Wigmore § 7.8.2, at 1376–77. The case for statutory privilege with respect to these documents in the hands of a third party is weak. *See id.* The need for frankness does not justify protecting preexisting documents because the documents were generated before the investigation commenced. *See Menoski v. Shih*, 612 N.E.2d 834, 836 (Ill. App. Ct. 1993) (documents created prior to peer review process are not privileged); *Moretti v. Lowe*, 592 A.2d 855, 857–58 (R.I. 1991).

The third category of documents identified by Wigmore includes those created for the purpose of submission to the reviewing body. Wigmore § 7.8.2, at 1377. According to Wigmore, "[j]ust as the core protection of documents generated by the committee encourages frankness during the committee's deliberations, this extension promotes candid submissions to the committee." *Id.*

In this case, however, the record clearly demonstrates that Hall had a purpose independent of the board's investigation in creating the internal audit. He wanted "immediate answers" so that "[i]f there was action that needed to be taken," he could take it. He "didn't want to wait for somebody else to do an audit and wait for their results." Hall was, as he put it, doing the "responsible thing," namely, getting to the bottom of a troublesome situation as rapidly as possible in order to take whatever corrective action might be needed.

Hall's purpose, namely, to find out what was going on in the pharmacy as rapidly as possible and take appropriate action in light of what might be discovered in the audit, does not relate in any way to the board's deliberative functions. It relates to the functioning of the Broadlawns pharmacy where Hall was the pharmacist in charge.

It was, of course, undisputed that Hall provided a copy of the internal audit to the board contemporaneously with his providing copies to Broadlawns and Cardinal Health. His purpose *in providing* the document to the board may have been to provide it with complete information, but his purpose *in creating* the document in the first place was not related to the board's investigation: Indeed, Hall conceded that it was independent of the board's slowly moving processes. Because we find that the audit was prepared for purposes independent of assisting the board in its investigation, we conclude that the internal audit falls

into the second category of documents identified by Wigmore. As a result, the privilege in Iowa Code section 272C.6(4) does not apply.

**B. Applicability of Iowa Code Section 22.7(61).**

1. *Introduction.* We next consider Hall's claims that the Broadlawns audit is protected from disclosure by Iowa Code section 22.7(61). This section provides, in relevant part, that material may be withheld if it amounts to:

> 61. Information in a record that would permit a governmental body subject to chapter 21 [Open Meetings Law] to hold a closed session pursuant to section 21.5 in order to avoid public disclosure of that information, until such time as final action is taken on the subject matter of that information. Any portion of such a record not subject to this subsection, or not otherwise confidential, shall be made available to the public.

Iowa Code § 22.7(61). Section 22.7(61) does not apply "more than ninety days after a record is known to exist by the governmental body, unless it is not possible for the governmental body to take final action within ninety days." *Id.*

In interpreting this section, we are guided by several well-established principles. There is a presumption in favor of disclosure under our freedom of information statutes. *City of Riverdale v. Diercks*, 806 N.W.2d 643, 652 (Iowa 2011); *Ne. Council on Substance Abuse, Inc. v. Iowa Dep't of Pub. Health*, 513 N.W.2d 757, 759 (Iowa 1994). Although we should not thwart legislative intent, the specific exemptions contained in freedom of information statutes are to be construed narrowly. *Ne. Council on Substance Abuse, Inc.*, 513 N.W.2d at 759. Freedom of information acts establish a liberal policy in favor of access to public records. *City of Dubuque v. Tel. Herald, Inc.*, 297 N.W.2d 523, 526 (Iowa 1980), *superseded by statute*, Iowa Code § 22.7(18) (1985), *as recognized in City of Sioux City v. Greater Sioux City Press Club*, 421 N.W.2d 895,

897 (Iowa 1988); *Howard v. Des Moines Register & Tribune Co.*, 283 N.W.2d 289, 299 (Iowa 1979).

We think the general purpose of section 22.7(61) is clear. It would make no sense, for example, to be able to hold a closed meeting to protect certain oral deliberations of government as confidential, but then impose a requirement that the minutes of a meeting or other documents revealing the deliberative processes be subject to disclosure under the public records act. *See* Iowa Code § 21.5(4) (stating the minutes of a closed session are not public records open to public inspection); *see also Tahoe Reg'l Planning Agency v. McKay*, 769 F.2d 534, 539–41 (9th Cir. 1985) (holding Nevada's open meeting law allows closed meetings for matters within the attorney-client privilege and protects from disclosure the minutes of those closed meetings); *Blethen Me. Newspapers, Inc. v. Portland Sch. Comm.*, 947 A.2d 479, 484 (Me. 2008) (holding documents prepared for use during executive session and notes made during executive session are not subject to public examination); *Cooper v. Bales*, 233 S.E.2d 306, 308 (S.C. 1977) (stating authorized closed meetings with mandated release of records of such meetings would be nonsensical).

2. *Litigation strategy.* Hall first seeks to come within Iowa Code section 22.7(61) through Iowa Code section 21.5(*c*), which allows for closed sessions "[t]o discuss strategy with counsel in matters that are presently in litigation or where litigation is imminent where its disclosure would be likely to prejudice or disadvantage the position of the governmental body in that litigation." Iowa Code § 21.5(*c*). The district court held section 21.5(*c*) was inapplicable because the ninety-day period under Iowa Code section 22.7(61) had elapsed and Broadlawns had not met the burden of showing that "final action was not possible within the ninety-day period." *See id.* § 22.7(61).

We do not adopt the district court's approach to the statute. When litigation is brought by a third party and is pending, it may not be possible for the public body, however diligent, to resolve the dispute within ninety days. Assuming as the district court found that a disciplinary action involved in this case was "litigation" under section 21.5(*c*), it seems reasonable to conclude that Broadlawns was not in a position to conclude the disciplinary matter within ninety days.

Nonetheless, we agree with the conclusion of the district court for a different reason. The internal audit in this case is not a discussion of legal strategy with counsel. As a result, release of the internal audit would not compromise information designed to be protected under Iowa Code section 21.5(*c*). The purpose of the exception is to protect attorney-client privilege resulting from communications that may lawfully be discussed in a closed meeting, not to throw a shroud around public documents that might relate to an ongoing controversy. *See City of L.A. v. Super. Ct.*, 49 Cal. Rptr. 2d 35, 39 (Ct. App. 1996) (nondisclosure designed "to prevent a litigant from obtaining a greater advantage against the governmental entity than would otherwise be allowed through normal discovery channels").

In addition, section 21.5(*c*) permits nondisclosure by a governmental body only where information would "likely . . . prejudice or disadvantage the position of *the governmental body* in that litigation." Iowa Code § 21.5(*c*) (emphasis added). Hall, of course, is not the governmental body, and prejudice as to him does not establish a basis for nondisclosure under a litigation strategy theory.

3. *Professional competence.* Hall next asserts that Broadlawns may decline to disclose the audit under Iowa Code section 21.5(*i*). This provision provides, in relevant part:

> *i.* To evaluate the professional competency of an individual whose appointment, hiring, performance or discharge is being considered when necessary to prevent needless and irreparable injury to that individual's reputation and that individual requests a closed session.

*Id.* § 21.5(*i*).

With respect to this exception, we cannot agree with Hall's assertion that the internal audit may be held confidential because it relates to Hall's performance in a general fashion. The purpose of the closed meeting under section 21.5(*i*) is to "*evaluate* the professional competency" of an individual. *Id.* (emphasis added). Nothing in the internal audit "evaluates" Hall's performance for the benefit of the governmental body. Under Hall's argument, a myriad of documents in a public agency would no longer be public documents because they "relate" to some employee's performance and might at some unspecified time in the future be considered in a closed meeting. We decline to create through interpretation a virtually limitless exception to our public records law. *Burton v. Univ. of Iowa Hosps. & Clinics*, 566 N.W.2d 182, 189 (Iowa 1997) (declining to interpret statutes in a fashion that creates broad exception to public disclosure as contrary to overriding legislative policy).

In addition, even if the internal audit did contain information which could be said to "evaluate the professional competency of an individual," we find the ninety-day limitation of Iowa Code section 22.7(61) to be applicable on this claim. We find nothing in the record to suggest that Broadlawns was not in a position to evaluate the competency of Hall within ninety days after the board learned of the existence of the internal audit in December of 2008. The Register's public records request came about a year later. It is, of course, always possible that after the receipt of a document, additional information in

the future might become available that would have a bearing on the employment status of a public employee. For example, if the board in the future determined to take disciplinary action against Hall, Broadlawns may wish to revisit the issue of Hall's employment status and might consider, among other things, the contents of the internal audit. The question, however, is whether the governmental entity is in a position to take any personnel action based on the information contained in the internal audit within ninety days. We think it clearly was.

**C. Availability of Injunctive Relief Under Iowa Code Chapter 22.8.** Finally, Hall urges that an injunction to prevent disclosure of the internal audit is appropriate under Iowa Code section 22.8. Iowa Code section 22.8 allows for injunctions to prevent disclosure when the court finds both that examination is "clearly" not in the public interest and that examination would "substantially and irreparably injure any person or persons." Iowa Code § 22.8(1)(*a*)–(*b*). The burden is on the person resisting disclosure to establish the elements by clear and convincing evidence. *Id.* § 22.8(3); *Gabrilson v. Flynn*, 554 N.W.2d 267, 273 (Iowa 1996). In evaluating a claim under Iowa Code section 22.8, the court must "take into account the policy of [chapter 22] that free and open examination of public records is generally in the public interest." Iowa Code § 22.8(3); *see Ne. Council on Substance Abuse, Inc.*, 513 N.W.2d at 761.

We do not believe Hall has met his burden of showing by "clear and convincing evidence" that disclosure of the audit is "clearly not . . . in the public interest." *See* Iowa Code § 22.8(1)(*a*). The public interest in information related to the theft of drugs from a pharmacy at a hospital funded by taxpayers is compelling. *Journal/Sentinel, Inc. v. Sch. Bd.*, 521 N.W.2d 165, 172 (Wis. Ct. App. 1994) ("All officers and employees of

government are, ultimately, responsible to the citizens, and those citizens have a right to hold their employees accountable for the job they do."). While Hall claims that disclosure would have a chilling effect on communications, we note that the internal audit merely presents factual information in a table format related to drug inventories at the pharmacy. *See* Note, *The Privilege of Self-Critical Analysis*, 96 Harv. L. Rev. 1083, 1094 (1983) (stating when facts presented in document are independently replicable, the chilling-effect rationale of the self-critical analysis privilege does not apply). The internal audit does not contain communications reflecting deliberative processes, does not make policy recommendations of any kind, and does not implicate privacy interests of third parties. Responsible public agencies will conduct such factual reviews when there are allegations of wrongdoing because they are necessary to protect the integrity of government operations. Under these circumstances, we cannot conclude that any potential chilling effect caused by release of the document establishes by "clear and convincing" evidence that disclosure of the audit is "clearly" not in the public interest. *See Cal. State Univ. v. Super. Ct.*, 108 Cal. Rptr. 2d 870, 887 (Ct. App. 2001) (holding claim that release of fundraising records would chill funding too speculative to support public records injunction).

Hall further claims that he will be prejudiced in the disciplinary proceeding before the board by public release of the internal audit. We reject this claim as well. As noted above, the factual material contained in the internal audit is already in the hands of the board. Further, the claim that the board will be improperly swayed by publicity is too speculative and too insubstantial to establish by "clear and convincing" evidence that disclosure is "clearly not . . . in the public interest" under

Iowa Code section 22.8. *See Bd. of Comm'rs v. Las Cruces Sun-News*, 76 P.3d 36, 45 (N.M. Ct. App. 2003) (concluding fear that release of information regarding sex abuse would trigger additional financial liability was too speculative to override interest in public disclosure); *Local 2489 v. Rock Cnty.*, 689 N.W.2d 644, 653 n.5 (Wis. Ct. App. 2004) (rejecting possible impact on grievance procedure as basis for nondisclosure of public documents).

**D. Availability of Attorney Fees Under Iowa Code Section 22.10.** In this case, the Register seeks a remand of the case to the district court "with instructions to award the Register all remedies required or permitted under Iowa Code [section] 22.10(3), including trial and appellate attorneys' fees and costs."

The district court, however, did not address the issue of costs and attorney fees. When a district court is reversed on the merits and does not as a result reach the question of whether a party is entitled to attorney fees, the proper course is to remand the case to the district court for a determination of what, if any, attorney fees should be awarded. *Baysden v. Hitchcock*, 553 N.W.2d 901, 905 (Iowa Ct. App. 1996) (remanding to district court for determination of entitlement, if any, to attorney fees under applicable contractual provisions); *see also Phoenix New Times, L.L.C. v. Arpaio*, 177 P.3d 275, 289–90 (Ariz. Ct. App. 2008) (remanding to district court in public records action for a ruling upon pending claim for statutory attorneys' fees not reached in original district court action). We therefore do not consider the issue properly before us on appeal. On remand, the district court shall in further proceedings determine the merits of the Register's claim for fees consistent with the facts and statutory standards set forth in *Diercks*.

*See generally Diercks*, 806 N.W.2d at 652–60. We express no view on the merits of any fee claim.

### IV. Conclusion.

For the above reasons, the judgment of the district court holding that the internal audit was not subject to disclosure under Iowa Code chapter 272C is reversed. The rulings of the district court that the plaintiff failed to establish the basis for nondisclosure under Iowa Code section 22.7(61) are affirmed. The matter is remanded for further proceedings in the district court.

**AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

All justices concur except Mansfield, J., who takes no part.