# In the Iowa Supreme Court

No. 23–1729

Submitted December 18, 2024—Filed February 14, 2025

**Allen Diercks** and **Diane Holst,**

Appellants,

vs.

**Scott County, Iowa** and **Kerri Tompkins,** Scott County Auditor,

Appellees.

Appeal from the Iowa District Court for Scott County, Henry W. Latham II, judge.

Private citizens appeal the district court's grant of summary judgment to a county and a county official on their claims for violations of the Iowa Open Records Act. **Reversed and Case Remanded.**

Christensen, C.J., delivered the opinion of the court, in which Mansfield, Oxley, and McDermott, JJ., joined. May, J., filed a dissenting opinion, in which Waterman and McDonald, JJ., joined.

Michael J. Meloy (argued) of Meloy Law Firm, Bettendorf, for appellants.

Kristina K. Lyon (argued), Assistant Scott County Attorney, for appellees.

Peter E. Larsen of Larsen Law Firm, PLLC, Urbandale, for amicus curiae Iowa Freedom of Information Council.

**Christensen, Chief Justice.**

When the Scott County Board of Supervisors (Board) experienced a midterm vacancy, a committee of county officials elected to fill the vacancy by appointment and kept certain applications confidential during the appointment process. To maintain confidentiality, the committee referred to applicants by numbers during its meeting and only revealed the name of the applicant appointed to fill the vacancy. After the appointment, two individuals submitted open records requests to Scott County seeking the confidential names and applications. Scott County denied the requests, citing Iowa Code section 22.7(18) (2023).

The individuals subsequently filed a petition in district court, which determined that Scott County and its record custodian were not required to fulfill the open records requests. We retained the plaintiffs' appeal. For the reasons explained below, we reverse the decision of the district court and remand for further proceedings.

### I. Background Facts and Proceedings.

A vacancy occurred on the Board when Tony Knobbe resigned in December 2022 to become the Scott County Treasurer. In accordance with Iowa Code sections 69.8 and 69.14A, a committee composed of Scott County's auditor (Kerri Tompkins), recorder (Rita Vargas), and treasurer (Knobbe) was formed to fill the vacancy. During its first meeting on January 5, 2023, the committee elected to fill the vacancy by appointment.[1] On January 18, a notice of the committee's intent to accept applications for the position was published, and interested

---

[1]A vacant Board position may be filled by appointment by a committee of county officials or by special election. *See* Iowa Code § 69.8. In this case, no request was made by an elector of Scott County for a special election, so the vacant position was filled by appointment. *See id.* § 69.14A.

applicants were instructed to email a resume and cover letter to Tompkins by January 24.

The published notice did not state that applications would be kept confidential, and the committee did not discuss the confidentiality of applications during its first meeting. However, after the meeting, then-Assistant Scott County Attorney Robert Cusack advised the committee:

> The applications, and all the information they contain, including the names of applicants, are to be considered confidential if the applicants request confidentiality. Because requesting confidentiality is not a standard feature of an application or cover letter, I suggest that a follow up email be sent to each applicant asking if confidentiality is requested.
>
> Confidentiality carries over to the open meeting to be held on January 26th. It will be awkward trying to discuss applicants without using their names, but you will have to determine some way to distinguish them – such as "applicant #1". Further, there may be a need to narrow down the number of applicants before you even begin if there are a large number of applicants. Just depends on how many apply.

In accordance with Cusack's advice, applicants were subsequently asked if they would like their application to remain confidential. Tompkins received twenty-seven applications for the Board position, and thirteen requested that their names and applications remain confidential after being prompted.

The committee reconvened on January 26 to appoint a member to the Board. After discussing five applicants by referencing numbers assigned to each person, the committee selected applicant number sixteen, Rita Rawson. Rawson's name was not revealed until after she was selected.

In accordance with Iowa Code chapter 22, Scott County received two open records requests regarding the identity of the applicants. On January 27, Diane Holst requested, "The names of the twenty-seven (27) individuals that submitted resumes to the Scott County Treasurer, Auditor and Recorder for consideration

in their efforts to appoint a county resident to fill the open County Supervisor seat." Cusack responded to Holst's request with a letter that stated:

> I am writing in response to your FOIA request dated 1/27/2023. Attached are the names of the applicants for the vacancy on the board of supervisors that did not request confidentiality.
>
> The names of the individuals that did request confidentiality were derived from their applications for the position and we are required to keep that information confidential at their request. *See* Iowa Code § 22.7(18) (exempting, with exceptions, communications from persons outside government to extent government could reasonably believe such persons would be discouraged from communicating because of potential for public examination); [*City of Sioux City v. Greater Sioux City Press Club*], 421 N.W.2d 895 (Iowa 1988) (holding that employment applications for which the applicants did not authorize disclosure may be maintained with confidentiality by their public custodians); *Gabrilson v. Flynn*, 554 N.W.2d 267, 275 (Iowa 1996) (indicating that a court properly relied on Iowa Code section 22.7(19) in enjoining a school board member from making the "content" of a performance assessment test public; the board member would only have known that "content" from the record itself).

On January 31, Allen Diercks made a similar request through his attorney Michael Meloy. Diercks' request asked for six categories of information:

> 1. A list showing the first and last name of the 27 applicants and copy of each application submitted for the 2022-23 Scott County Supervisor vacancy.
>
> 2. The Minutes of the meeting, Motions voted upon and the Video of the January 26, 2023 Special Scott County meeting held by the County Recorder, Treasurer and Auditor.
>
> 3. Any and all public notices, postings, published notices, advertisements and/or other notices regarding the Supervisor vacancy and intent of the County to appoint a Scott County resident to fill the position.
>
> 4. Any motions, resolutions and/or ordinances approved by the Board of Supervisors regarding the vacancy created by Mr. Knobbe's resignation from the Scott County Board.

5. A signed copy of Tony Knobbe's resignation letter to Scott County.

6. All E-mails, E-mail attachments and Text messages, on a county cell phone or privately owned cell phone, sent to or received by Scott County Recorder Rita Vargas, Scott County Auditor Kerri Tompkins and/or Scott County Treasurer Tony Knobbe regarding the vacancy on the Board of Supervisors, between November 8, 2022 and January 30, 2023.

Cusack responded that most of the information Diercks requested would be made available to him through a physical flash drive. However, Cusack once again maintained that some applications must remain confidential and offered to request an opinion from the Iowa Public Information Board regarding the confidentiality of the applications.

In response to Scott County's denial, Diercks and Holst filed a petition in district court requesting equitable relief by declaratory judgment and injunctive relief. After Scott County and Tompkins,[2] Scott County's record custodian, filed an answer to the petition, both parties filed a motion for summary judgment. On September 8, the district court granted Scott County's motion for summary judgment without a hearing.

The district court determined that Iowa Code section 22.7(18), a statutory exemption to Iowa's Open Records Act, applied to this case. Citing *City of Sioux City v. Greater Sioux City Press Club*, the district court noted that applications for employment fall within this exemption, and Diercks and Holst did not provide "a compelling reason to believe applicants filling this vacancy are not employees." Therefore, the names of the nonconsenting applicants remained confidential. Diercks and Holst filed a timely appeal, which we retained.

---

[2]Hereinafter, references to Scott County also reference Tompkins.

**II. Standard of Review.**

"Generally, actions brought under [Iowa's Open Records Act] are in equity and reviewed de novo." *ACLU Found. of Iowa, Inc. v. Recs. Custodian, Atl. Cmty. Sch. Dist.*, 818 N.W.2d 231, 232 (Iowa 2012) (citing *Gannon v. Bd. of Regents*, 692 N.W.2d 31, 37 (Iowa 2005)). However, when a district court's ruling under the Act is for summary judgment, we review the decision for correction of errors at law. *Id.* (citing Iowa R. App. P. 6.907; *Gannon*, 692 N.W.2d at 37). "The district court should grant summary judgment if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Teig v. Chavez*, 8 N.W.3d 484, 490 (Iowa 2024) (omission in original) (quoting *Story Cnty. Wind, LLC v. Story Cnty. Bd. of Rev.*, 990 N.W.2d 282, 285 (Iowa 2023)). The record is reviewed in the light most favorable to Diercks and Holst. *See id.* (citing *Koster v. Harvest Bible Chapel–Quad Cities*, 959 N.W.2d 680, 687 (Iowa 2021)).

**III. Analysis.**

The issue presented—whether the *Press Club* holding concerning section 22.7(18) extends to the applications of individuals seeking appointment to fill a vacancy for an elected office—is one of first impression for our court. Diercks and Holst contend that their records requests do not fall within section 22.7(18)'s exemption to Iowa's Open Records Act. Scott County argues that this case is analogous to *Press Club* and that the district court was correct to dismiss the plaintiffs' claims. *See* 421 N.W.2d at 898.

**A. Iowa's Open Records Act.** Chapter 22 of the Iowa Code, Iowa's Open Records Act, "is designed 'to open the doors of government to public scrutiny [and] prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act.'" *Ripperger v. Iowa Pub. Info. Bd.*,

967 N.W.2d 540, 549 (Iowa 2021) (alteration in original) (quoting *Mitchell v. City of Cedar Rapids*, 926 N.W.2d 222, 229 (Iowa 2019)). " 'There is a presumption in favor of disclosure' and 'a liberal policy in favor of access to public records.' " *Mitchell*, 926 N.W.2d at 229 (quoting *Hall v. Broadlawns Med. Ctr.*, 811 N.W.2d 478, 485 (Iowa 2012)).[3] "The Act essentially gives all persons the right to examine public records . . . [but] then lists specific categories of records that must be kept confidential . . . . The general assembly [thereby] created and fixed the limitations on disclosure." *Id.* (alterations and omissions in original) (citation omitted) (quoting *ACLU Found. of Iowa*, 818 N.W.2d at 232–33).

Under the Act, to sustain a cause of action, claimants must show: "(1) 'the defendant is subject to the requirements' of chapter 22, (2) 'the records in question are government records,' and (3) 'the defendant refused to make those government records available for examination and copying by the plaintiff.' " *Teig*, 8 N.W.3d at 490 (quoting Iowa Code § 22.10(2)) (citing *Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 460 (Iowa 2013)). If these requirements are met, Iowa Code section 22.10(2) shifts the burden of proof to the defendant. Here, Diercks and Holst presented evidence that the requested records refused by Scott County are public records subject to disclosure under chapter 22, and the burden shifted to Scott County to "demonstrate compliance by showing the [information] is exempt from disclosure as confidential under section 22.7(18)." *Ripperger*, 967 N.W.2d at 550. Thus, we must determine whether Scott County met its burden of proof for the district court to grant summary judgment.

**B. Iowa Code Section 22.7(18).** Iowa Code section 22.7 lists seventy-five types of public records that must remain confidential unless otherwise ordered

---

[3]Iowa Code section 22.8(3) states, "[T]he policy of this chapter [is] that free and open examination of public records is generally in the public interest even though such examination may cause inconvenience or embarrassment to public officials or others."

by a court, the lawful record custodian, or another person "authorized to release such information." One type of public record that must remain confidential includes:

> Communications not required by law, rule, procedure, or contract that are made to a government body or to any of its employees by identified persons outside of government, to the extent that the government body receiving those communications from such persons outside of government could reasonably believe that those persons would be discouraged from making them to that government body if they were available for general public examination.

*Id.* § 22.7(18). "There are three exceptions to the area of confidentiality described in this statute. These relate to (a) consent of the communicating party, (b) information which may be disclosed without identifying its source, and (c) information surrounding the occurrence of a crime." *Press Club*, 421 N.W.2d at 898.

We have interpreted section 22.7(18) in several different circumstances, and *Press Club* is the most factually similar to this case. *See* 421 N.W.2d at 896–97. There, the issue was whether applications for a vacant city manager position were statutorily exempt from the disclosure requirements of chapter 22. *Id.* We noted that subsection (18) uses "broadly inclusive language," and the legislature's goal for the subsection was "to permit public agencies to keep confidential a broad category of useful incoming communications which might not be forthcoming if subject to public disclosure." *Id.* at 897–98. The employment applications at issue in *Press Club*, which were designated as confidential by the city at the outset of the application process, fell within this legislative goal and were confidential under section 22.7(18). *Id.* at 898–99.

Since *Press Club*, we have further developed subsection (18)'s applicability to open records cases, establishing four criteria that must be met for a

communication to be covered by subsection (18). Specifically, the communication must "(1) not [be] required by law and (2) made to a government body (3) by someone outside government, and (4) the [government body] could reasonably believe that the sender would be discouraged from making such communications if [the government body] publicly disclosed it." *Teig*, 8 N.W.3d at 492 (second and third alteration in original) (quoting *Kirkwood Inst. Inc. v. Sand*, 6 N.W.3d 1, 13 (Iowa 2024)). Only the last criterion is at issue in this case.

We recently expounded on the test for that criterion in *Ripperger v. Iowa Public Information Board. See* 967 N.W.2d at 552–53. We held that the Polk County Assessor could reasonably believe individuals would be deterred from requesting removal from the public name search function on the assessor's website if the list of those individuals was made public. *Id.* at 544. Whether the assessor could reasonably believe that publicizing the list of names would deter property owners from requesting removal is "an objective test, from the perspective of the record custodian, not the . . . district court." *Id.* at 553. We concluded that "[w]hen, as here, the record custodian could reasonably believe disclosure of the list would deter such communications, that determination should be upheld, not second-guessed, even if others could reasonably disagree with the custodian." *Id.*

**C. The Record Requests in This Case.** Diercks's and Holst's main argument hinges on distinguishing the applications for the vacant Board position from the applications at issue in *Press Club. See* 421 N.W.2d at 898–99. They argue that we should recognize that applications for a vacant county board of supervisors position are not confidential under section 22.7(18). *See id.* Scott County argues that the applications for the vacant Board position are inherently

similar to the job applications at issue in *Press Club* and should be treated as such. *See id.*

While these arguments may be relevant to our analysis, we reiterate the limitations of *Press Club* that we recognized in *Teig v. Chavez.* Specifically, *Press Club* was limited to the "[t]he employment applications which are involved in the present litigation." *Teig*, 8 N.W.3d at 492 (quoting *Press Club*, 421 N.W.2d at 899). This case is not resolved by determining whether Board members are employees and whether applicants for the Board submit employment applications during the appointment process.

Instead, the question that we must answer is whether the record custodian, Tompkins, could "reasonably believe that [persons outside the government] would be discouraged from making [the communications] to that government body if they were available for general public examination." Iowa Code § 22.7(18). Again, this test is an objective one that must be applied from the perspective of the record custodian. *Ripperger*, 967 N.W.2d at 552–53. If Tompkins could have reasonably believed that disclosure of the applications would deter people from outside the government from submitting them, even if others could reasonably disagree, that decision should stand. *See id.*

Unlike the applicants in *Ripperger* and *Press Club*, whom the government promised confidentiality before submitting their information, the Scott County applicants received no such promise beforehand. *See Ripperger*, 967 N.W.2d at 554; *Press Club*, 421 N.W.2d at 896. The fact that twenty-seven candidates applied without a promise of confidentiality suggests that the prospect of disclosure did not in fact deter people from submitting applications.

Additionally, when the applicants were prompted about the confidentiality of their applications, only thirteen of the twenty-seven applicants expressed a

preference that their applications remain confidential. In other words, more than half of the applicants were not concerned about their applications being public, even when subsequently asked. Regardless, as we stressed in *Ripperger*, "government officials cannot shield public documents from examination merely by promising confidentiality for communications that *otherwise* fall outside section 22.7(18)." 967 N.W.2d at 554. It is the expectation of the custodian—not the applicants—that matters concerning confidentiality. *See Kirkwood Inst. Inc.*, 6 N.W.3d at 12 ("Chapter 22 imposes no duty on government bodies to affirmatively contact every person who has submitted a record subject to this statute to obtain consent for disclosure.").

Further, even if Board members are employees as Scott County argues, the position remains a public office that is filled in a public process. *See Press Club*, 421 N.W.2d at 898. Supervisors are not just public officials, they are elected officials, elected biennially by the voters of Scott County to serve four-year terms. *See* Iowa Code § 39.18. Only when there is a midterm vacancy is an appointment even possible. *See id.* §§ 69.8(4) (providing that vacancies for a county board of supervisors position are filled "as provided in section 69.14A"), .14A(1)(*a*)–(*b*) (providing two processes for filling a vacant board of supervisor position: "appointment by the committee of county officers designated to fill the vacancy in section 69.8" or "[b]y special election"). Even then, the committee has the choice to fill the public office by appointment or special election. *See id.* § 69.14A(1)(*a*)–(*b*). And even where, as here, the committee chooses to proceed by appointment, county electors can, by petition, force the vacancy to be filled through the special election process. *See id.* § 69.14A(1)(*a*)(2), (*b*)(1) ("The committee of county officers . . . shall, upon receipt of a petition as provided in paragraph 'a', call for a special election to fill the vacancy in lieu of

appointment."). When the committee here selected the appointment option, perhaps it considered the cost benefits of the appointment process. Regardless, there is no evidence in the record that Scott County contemplated that an appointment would be less public than a special election.

As evidenced by the setting of a public meeting, the committee clearly expected to provide the public with an opportunity to comment on their selection. This is further supported by the fact that Scott County took no steps to make this meeting a closed meeting under Iowa Code chapter 21. It is not reasonable for Tompkins to believe that people would be deterred from applying when the applicants were explicitly told that "[t]he appointment will be made during a special meeting of the Committee" and were directed where to find the location and timing of the meeting. Twenty-seven people were informed that the selection would be made in a public meeting and still chose to apply.

Lastly, the vacant Board position is also unique because of the nature of the position. Federal law and our caselaw have noted the difference between public officials who are elected and regular employees in several contexts. *See, e.g.,* 29 U.S.C. § 630(f) ("The term 'employee' means an individual employed by any employer except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State . . . ."); *Hutton v. State,* 16 N.W.2d 18, 19 (Iowa 1944) (noting five elements that distinguish a public official from an employee). Unlike the position in *Press Club*, this is a public office that is regularly filled in a public manner, and it would not be reasonable for Tompkins to believe that people would be deterred from applying because the process is not confidential. *See* 421 N.W.2d at 896, 899.

Scott County did not meet its burden to prove that Tompkins could have reasonably believed that making the applications publicly available would have

deterred people outside the government from submitting that type of communication to Scott County. *See* Iowa Code § 22.7(18). We hold that an application from an individual outside of government for a vacant county board of supervisors position that is being filled through the appointment process, as described in section 69.14A, is not a confidential record exempt from disclosure under section 22.7(18). The district court erred when it granted summary judgment.

**D. Remedies.** Because Scott County has violated chapter 22, we now consider the remedies available to Diercks and Holst. Under section 22.10:

> Upon a finding by a preponderance of the evidence that a lawful custodian has violated any provision of this chapter, a court:
>
> *a.* Shall issue an injunction punishable by civil contempt ordering the offending lawful custodian and other appropriate persons to comply with the requirements of this chapter in the case before it and, if appropriate, may order the lawful custodian and other appropriate persons to refrain for one year from any future violations of this chapter.
>
> *b.* Shall assess the persons who participated in its violation damages in the amount of not more than five hundred dollars and not less than one hundred dollars. . . . A person found to have violated this chapter shall not be assessed such damages if that person proves that the person did any of the following:
>
> . . . .
>
> (3) Reasonably relied upon a decision of a court, a formal opinion of the Iowa public information board, the attorney general, or the attorney for the government body, given in writing, or as memorialized in the minutes of the meeting at which a formal oral opinion was given, or an advisory opinion of the Iowa public information board, the attorney general, or the attorney for the government body, given in writing.
>
> *c.* Shall order the payment of all costs and reasonable attorney fees, including appellate attorney fees, to any plaintiff successfully establishing a violation of this chapter in the action brought under this section.

Iowa Code § 22.10(3)(*a*), (*b*)(3), (*c*).

Scott County reasonably relied on the prior assistant county attorney's written opinion that the applications could not be disclosed and are not liable for damages under section 22.10(3)(*b*)(3). However, Diercks and Holst are entitled to all costs and reasonable attorney fees under section 22.10(3)(*c*), and the names of all applicants and the applications must be disclosed. Because no individual defendant is liable for damages, Scott County will be responsible for the fees and costs. A one-year injunction is not appropriate given the defendants' reliance on a written opinion of their assistant county attorney and our previous guidance concerning applications in *Press Club*. *See Teig*, 8 N.W.3d at 500.

**IV. Conclusion.**

For these reasons, we reverse the district court's grant of summary judgment and remand the case for further proceedings.

**Reversed and Case Remanded.**

Mansfield, Oxley, and McDermott, JJ., join this opinion. May, J., files a dissenting opinion, in which Waterman and McDonald, JJ., join.

**May, Justice (dissenting).**

I appreciate the majority's efforts on this case. In my view, though, the law does not support the majority's decision to reverse. The plain language of chapter 22 and our controlling caselaw both point in the same direction. They both show that Scott County acted properly by extending confidentiality to the applications at issue here. And they both show that the district court was right in refusing to require disclosure of those applications. We should affirm the district court's order. I respectfully dissent.

I.

Iowa Code chapter 22 is Iowa's Open Records Act. Its stated policy is that "free and open examination of public records is generally in the public interest." Iowa Code § 22.8(3) (2023). The word "generally" should not be overlooked. "After all, no statute . . . pursues" a single " 'broad purpose' at all costs." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 21 (2012). Chapter 22 certainly doesn't. Although some portions of chapter 22 ensure open access to public records, *see, e.g.,* Iowa Code § 22.2(1), other portions push *in the opposite direction* by *limiting* the disclosure of public records, *see, e.g.*, *id.* § 22.2(4). In other words, like all statutes, chapter 22 reflects the legislature's *balancing* of competing goods. The legislature balanced the virtues of open access against the also-important virtues of confidentiality.

Confidentiality is clearly and vigorously protected in section 22.7, entitled "Confidential records." *Id.* § 22.7. Each of its seventy-five subsections identifies categories of public records that are deemed confidential and, therefore, protected from disclosure. *Id.*; *see also Kirkwood Inst. Inc. v. Sand*, 6 N.W.3d 1, 7 (Iowa 2024). Section 22.7 embodies the legislature's deliberate "policy choice"

to protect those records "categorically." *Ripperger v. Iowa Pub. Info. Bd.*, 967 N.W.2d 540, 550 (Iowa 2021) (quoting *Mitchell v. City of Cedar Rapids*, 926 N.W.2d 222, 234 (Iowa 2019)). *But cf.* Iowa Code § 22.7 (permitting the release of listed documents in circumstances not relevant here).

The question here is whether this categorical protection applies to certain employment applications because they fell within section 22.7(18). It extends confidentiality to

> Communications not required by law, rule, procedure, or contract that are made to a government body or to any of its employees by identified persons outside of government, to the extent that the government body receiving those communications from such persons outside of government could reasonably believe that those persons would be discouraged from making them to that government body if they were available for general public examination.

Iowa Code § 22.7(18). *But see id.* § 22.7(18)(*a*)–(*c*) (providing exceptions).

By its plain terms, section 22.7(18) protects communications that are voluntarily submitted to a government body *if* the receiving body "could reasonably believe that" senders would be discouraged from making such communications if the communications were publicly disclosed. *Id.* § 22.7(18); *see also Kirkwood Inst. Inc.*, 6 N.W.3d at 12–13. Its clear purpose is "to permit public agencies to keep confidential a broad category of useful incoming communications which might not be forthcoming if subject to public disclosure." *Ripperger*, 967 N.W.2d at 551 (quoting *City of Sioux City v. Greater Sioux City Press Club*, 421 N.W.2d 895, 898 (Iowa 1988)).

That broad category certainly includes applications for employment. We first reached this conclusion in *City of Sioux City v. Greater Sioux City Press Club*, where we held that section 22.7(18)'s confidentiality extends to employment applications for the position of city manager. 421 N.W.2d at 898–99.

We reaffirmed *Press Club*'s conclusion in *Ripperger v. Iowa Public Information Board*, 967 N.W.2d at 551. Like *Press Club*, *Ripperger* observed that employment applications for positions of public responsibility constitute "useful incoming communications which could be deterred by public disclosure." *Id.*; *see also Press Club*, 421 N.W.2d at 898. *Ripperger* also recited *Press Club*'s observation that "[i]n viewing the potential category of solicited communications which might be received by public agencies and for which they may wish to maintain confidentiality, employment applications come immediately to mind." *Ripperger*, 967 N.W.2d at 551 (quoting *Press Club*, 421 N.W.2d at 898). After all, *Ripperger* noted, "[p]resumably some of those job applicants would have thought twice about applying if doing so put them on a public list that could be seen by their current employer." *Id.*

We said much the same in *Teig v. Chavez*, 8 N.W.3d 484 (Iowa 2024). *Teig* again reaffirmed *Press Club* and its conclusion that "employment applications fit within the 'broad category of useful incoming communications' protected" by section 22.7(18). *Id.* at 492 (quoting *Press Club*, 421 N.W.2d at 898). *Teig* also recalled *Ripperger*'s favorable citation of *Press Club* as well as *Ripperger*'s explanation that job applicants might think "twice about applying if doing so put them on a public list that could be seen by their current employer." *Id.* at 493 (quoting *Ripperger*, 967 N.W.2d at 551); *see also Press Club*, 421 N.W.2d at 898. To be sure, *Teig* clarified that because section 22.7(18) only applies to submissions by "persons outside of government," its protections don't extend to *internal* applicants. *Id.* at 492–95 (quoting Iowa Code § 22.7(18)). But *Teig* confirmed that "[s]ection 22.7(18) protects applications received from *external candidates*, meaning anyone not employed by the [government-employer] when the application was submitted." *Id.* at 495 (emphasis added).

*Teig* was decided less than a year ago.

## II.

Once you've read *Teig*, *Ripperger*, and *Press Club*, and once you've studied the plain language of section 22.7(18), the present case becomes fairly straightforward. The question presented is whether section 22.7(18)'s protections apply to applications for appointment to Scott County's county supervisor position. Under the text of section 22.7(18), the answer depends on whether Scott County could have reasonably believed that disclosing applications would deter similar communications. *Teig*, *Ripperger*, and *Press Club* all suggest that it could. All three opinions suggest that employers can reasonably believe that disclosure of employment applications would deter similar communications. All three opinions suggest that those applications are protected by section 22.7(18). I see no reason to abandon those teachings today. Rather, we should follow them and conclude that section 22.7(18)'s protections apply.

## III.

This conclusion aligns with the lived experiences of those public servants who served the people of Scott County in their effort to fill the county supervisor position. Consider these statements by Scott County Auditor Kerry Tompkins:

> My background includes office management experience of over 20 years. Throughout this experience, it is routine to keep job candidate names and information confidential. I believe candidates expect confidentiality as they often do not notify their current employer of the interest. In addition, candidates may have felt more open to apply and learn more about the opportunity knowing their name would not be public. . . .

> In meeting with many of the interested candidates [for the open county supervisor position], I found several were very grateful for the confidentiality option. Candidates were interested in learning more about the position and opportunities throughout Scott County.

Consider also the affidavit of Scott County Recorder Rita Vargas. Vargas participated in the process at issue here and also in a prior appointment process for another supervisor position in 2006. On both occasions, Vargas explains, the applicants were permitted to "choose for themselves, for whatever personal reason," to have their applications kept confidential. Vargas believes that "[i]n both cases the citizens benefited for allowing the very best to apply without fear of recourse to themselves."

Also consider the affidavit of Scott County Treasurer Tony Knobbe, who also participated in the process at issue here. Knobbe offered these observations about the importance of confidentiality:

> I have never been part of a selection process for hiring where the name of any candidate was made public prior to a final decision, background checks, and offer and acceptance of terms of employment. To me it seemed natural that some candidates would want to remain anonymous, unless chosen for the position. I think it is for this reason that we were blessed with 27 great applicants for the job. I'm absolutely convinced that the field would have been much smaller had we not offered confidentiality.

Of course, by citing these observations, I do not mean to imply that subjective beliefs are determinative here. Instead, as the majority recognizes, section 22.7(18) requires an *objective* inquiry as to whether Scott County "could" reasonably believe that disclosure would discourage applicants. *See* Iowa Code § 22.7(18). Importantly, though, this objective inquiry must be judged "from the perspective of the record custodian," Scott County, "*not* the . . . *court*['s]." *Ripperger*, 967 N.W.2d at 553 (emphasis added). And so, as *Ripperger* emphasizes, a court errs "by substituting its judgment for that of the record custodian." *Id.* So long as "the record custodian could reasonably believe disclosure . . . would deter such communications, that determination should be

upheld, not second-guessed, even if others could reasonably disagree with the custodian." *Id.*

Applying these principles here, we should uphold Scott County's reasonable decision to protect the applications from disclosure. We should not second-guess Scott County or substitute our judgment for its.

IV.

The majority says that a different outcome is justified by several circumstances, including (1) Scott County's failure to make the promise of confidentiality sufficiently explicit from the beginning of the process, (2) the fact that a good number of applicants (twenty-seven) actually applied nonetheless, (3) the fact that only about half of those applicants accepted an explicit offer of confidentiality, and (4) the fact that the selection process involved a public meeting—although, during that meeting, Scott County's selection committee concealed the names of applicants who requested confidentiality by referring to them by numbers, e.g., applicant fourteen, applicant twenty, applicant twenty-two.

I respectfully submit that none of these considerations are relevant. Neither the statutory text nor our cases suggest that section 22.7(18)'s protection depends on these things. Its protection does not depend on how zealously the protection is advertised, how many applicants ultimately apply, how many applicants subjectively care about the protection, or whether the protection may be compromised at some point. Instead, section 22.7(18)'s protection depends on a single issue: whether "the record custodian"—Scott County—"**could** reasonably **believe**" that disclosure of applicants' information "would deter such communications." *Id.* (emphasis added); *see also* Iowa Code § 22.7(18). As

already explained, Scott County could reasonably hold that belief. So the protection applies.

V.

The majority also worries that although county supervisors are employees—they receive paychecks and so on—they aren't *regular* employees. They are public officials who are *usually* chosen through elections. For the majority, this means that the supervisor selection process should be wholly public even where, as here, there is no election.

I disagree for three reasons. First, to be clear, although an election was an option that the county could have chosen, *there was nothing improper* about its selection of an appointment process instead. Indeed, Iowa Code section 69.14A(1) is clear that the county could choose between the two processes. And nothing in Iowa law requires that if (as here) the appointment process is chosen, that process must be conducted in the same overtly public manner as an election.

Second, it is important to realize that although *the chosen* applicant *would become* a public official *once chosen*, the *applicants* themselves were *not* public officials *when they applied.* And the twenty-six applicants who *weren't* chosen *did not become* public officials. There is no good reason that those unsuccessful applicants couldn't continue to enjoy confidentiality.

Finally, and perhaps most importantly, nothing in the statute or our cases suggests that the analysis under section 22.7(18) is different because applications are made for a higher-profile position rather than a lower-profile position. If anything, the opposite is true. *Press Club* said section 22.7(18) protects applications for city manager, while *Teig* said section 22.7(18) protects applications for city clerk and city attorney. *Press Club*, 421 N.W.2d at 898–89;

*Teig*, 8 N.W.3d at 492–95. All of those are important positions with relatively high profiles in local government.

## VI.

The plaintiffs suggest that we should compare Scott County's selection process with the processes used to select judges. This makes sense because both judges and county supervisors are public officials with somewhat high profiles.

But fair consideration of those processes does not support the plaintiffs' case. Rather, it supports Scott County's decision in favor of confidentiality. To understand why, it is helpful to compare the methods used to select Iowa's state court judges with those used to select federal magistrate judges.

Let's start with the process for state judges. *See generally* Iowa Const. art. V, §§ 15–16; Iowa Code ch. 46; Iowa Code §§ 602.6201, .6304, .6305; *see also* Iowa JNC, *About Merit Selection, Appointing Authority, and Accountability*, https://www.iowajnc.gov/about [https://perma.cc/VFV3-NRY8] (discussing Iowa's merit selection process). Every applicant for a state judicial position must submit an application that is a nonconfidential public record. The names of all applicants are publicized on the internet and elsewhere. A judicial nomination commission studies the applications and interviews applicants. Ultimately, the commission sends a list of nominees, which is also publicized, to the Governor's office. The Governor selects from that list.

This very public approach has benefits. By publicizing the names of applicants, Iowa's process encourages the flow of information about the applicants from citizens to decision-makers. But there are costs, too, particularly for private practice attorneys. If partners and clients know that a lawyer is trying to leave the practice of law to become a judge, they may think twice about sending new projects to that lawyer. Meanwhile, the applying lawyer has no

guarantee of being nominated—much less selected—for a judgeship. We know that these concerns deter some good candidates from applying.

Conversely, more good candidates would apply *if* they could do so while maintaining at least a degree of anonymity. The federal judicial system has recognized this for a long time. So the processes for selecting federal magistrate judges include rigorous confidentiality requirements to protect the identities of applicants. These confidentiality requirements are imposed for the express purpose of "encourag[ing] the greatest number of applicants and to protect their privacy." 2 Admin. Off. of the U.S. Cts., *The Selection, Appointment, and Reappointment of United States Magistrate Judges* 23 (2010), https://www.nced.uscourts.gov/pdfs/Selection-Appointment-Reappointment-of-Magistrate-Judges.pdf.

If the federal judicial system believes that confidentiality tends to encourage the greatest number of applicants for magistrate judge positions, wouldn't it be reasonable for Scott County to reach the same conclusion when appointing a county supervisor? Surely it would.

VII.

The federal judicial system isn't the only major public employer that understands the importance of providing confidentiality to applicants. Far from it. Consider the University of Iowa (University), which has more than 30,000 employees on staff, including most of Iowa's highest paid public employees. *See* Univ. of Iowa, *2023–2024 Data Digest* 55 (2024); Tim Webber, *Database Reveals State of Iowa's Highest-Paid Employees*, Des Moines Reg. (Aug. 5, 2024), https://www.desmoinesregister.com/story/news/2024/07/16/salary-database-how-much-do-state-of-iowas-highest-paid-employees-make-kim-reynolds/74408408007/ [https://perma.cc/Y36A-K3QB].

On its webpage—under the heading "Job Applicant Confidentiality"—the University notes this:

> Judges, legislators, and researchers have concluded that many . . . applicants would be deterred from seeking public employment in an open search process. The University of Iowa's own experience confirms those conclusions. The best . . . applicants frequently hold positions of respect and authority with other employers. Those individuals may decline to participate in a personnel search due to legitimate and reasonable concerns that disclosure of the individual's participation in the search may adversely impact the individual's ability to perform the individual's present job.

Hum. Res., Univ. of Iowa, *Job Applicant Confidentiality*, https://hr.uiowa.edu/policies/job-applicant-confidentiality [https://perma.cc/F5M3-5N2S].

The University goes on to state its official determination that "qualified outside candidates would be discouraged from applying for university positions" if their applications were made public. *Id.* The University also worries that those applicants "may suffer needless and irreparable injury to their reputation" if their applications were made public. *Id.* Accordingly, the University concludes that applications from outside of Iowa state government "shall be maintained as *confidential* in accordance with the terms of the Iowa open records law." *Id.*

Surely Scott County could reach similar conclusions concerning county supervisor applicants. And surely it was reasonable for Scott County to keep their applications confidential.

## VIII.

Until today, Iowa law offered a safe harbor for public employers like Scott County and the University. They could trust our pronouncements in *Teig*, *Ripperger*, and *Press Club*. They could certainly trust *Teig*'s 2024 pronouncement that "22.7(18) protects applications received from *external candidates*, meaning

anyone not employed by the [government-employer] when the application was submitted." *Teig,* 8 N.W.3d at 495 (emphasis added).

After today, things will be more complicated. With all respect, I do not think the majority opinion makes it clear which employment applications will be protected by section 22.7(18) and which will be subject to public disclosure.

This new uncertainty will have consequences. It will cause public employers to hesitate before promising confidentiality to applicants. It will also cause applicants to think twice before believing any promises of confidentiality. This may well result in smaller pools of qualified applicants for positions of responsibility in government.

IX.

The majority's decision is inconsistent with the text of Iowa Code section 22.7(18) and our controlling caselaw. I respectfully dissent.

Waterman and McDonald, JJ., join this dissent.